PEOPLE v PETRELLA

PEOPLE v SIMPSON

Docket Nos. 71556, 73731. Argued June 25, 1985 (Calendar Nos. 27, 28).—Decided December 30, 1985. Released January 10, 1986.

Jerry Petrella was convicted by a jury in the Ingham Circuit Court, Jack W. Warren, J., of breaking and entering an occupied dwelling with intent to commit first-degree criminal sexual conduct and of first-degree criminal sexual conduct. The Court of Appeals, BRONSON, P.J., and T. M. BURNS and ALLEN, JJ., affirmed (Docket No. 55742). The defendant appeals.

Maurice Simpson was convicted following a bench trial in the Allegan Circuit Court, George R. Corsiglia, J., of first-degree criminal sexual conduct involving his adult daughter. The Court of Appeals, MACKENZIE, P.J., and J. H. GILLIS and ME-GARGLE, JJ., affirmed (Docket No. 50790). The defendant appeals.

In both cases, the defendants challenge the sufficiency of the evidence of the victims' mental anguish to support their convictions of first-degree criminal sexual conduct. In *Petrella,* the defendant additionally challenges the Criminal Jury Instruction defining mental anguish.

In an opinion by Justice RYAN, joined by Chief Justice

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 5, 7] Am Jur 2d, Assault and Battery §§ 24-27, 41, 42, 55; Rape §§ 1-26.

Sufficiency of allegations or evidence of serious bodily injury to support charge of aggravated degree of rape, sodomy, or other sexual abuse. 25 ALR4th 1213.

What constitutes offense of "sexual battery." 87 ALR3d 1250.

Assault and battery: sexual nature of physical contact as aggravating offense. 63 ALR3d 225.

[4] Am Jur 2d, Appeal and Error §§ 885, 886.

[6] Am Jur 2d, Trial §§ 573 *et seq.*

Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.

[7] Propriety of, or prejudicial effect of omitting or of giving, instruction to jury, in prosecution for rape or other sexual offense, as to ease of making or difficulty of defending against such a charge. 92 ALR3d 866.

[8] Am Jur 2d, Evidence §§ 1170-1178.

Williams and Justices Brickley, Cavanagh, Boyle, and Riley, the Supreme Court *held:*

The provision in the criminal sexual conduct statute which permits elevation of a criminal sexual conduct offense from a lesser to a higher degree on the basis of proof of personal injury to the victim in the form of mental anguish does not offend the United States or Michigan Constitutions. The term "mental anguish" as used in the statute means extreme or excruciating pain, distress, or suffering of the mind. In *Petrella,* a rational trier of fact could have found that the element of mental anguish was proven beyond a reasonable doubt. In *Simpson,* a rational trier of fact could not have reached such a conclusion because the prosecutor failed to produce sufficient evidence of the element, and remand for entry of a conviction of third-degree criminal sexual conduct and resentencing is required.

The definition of mental anguish in CJI 20:2:11(5) is erroneous and misleading, and its use is disapproved. Use of the instruction in *Petrella,* however, did not result in any prejudice to the defendant.

1. In order to be convicted of first-degree criminal sexual conduct, a person must have engaged in sexual penetration with another person, accompanied by one of seven aggravating circumstances, including causing personal injury to the victim where force or coercion is used to accomplish sexual penetration. Use of force or coercion, alone, is third-degree criminal sexual conduct. The element of personal injury elevates the offense to first-degree criminal sexual conduct. Personal injury is bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ. Mental anguish is not defined in the criminal sexual conduct statute.

2. Mental anguish, in its ordinary and generally understood sense, means extreme or excruciating pain, distress, or suffering of the mind. So defined, the term is not constitutionally vague. The concept is not beyond the grasp of a trier of fact; nor is it so indefinite as to confer unstructured and unlimited discretion on the trier of fact to determine which, if any, offense has been committed. While all rape victims may in fact suffer mental anguish, in order to support a conviction of first-degree criminal sexual conduct on the basis of the aggravating factor of mental anguish, a prosecutor must produce evidence which would cause a reasonable trier of fact to conclude beyond a reasonable doubt that the victim suffered mental anguish. Because it has not been shown that it is psychologically or

sociologically sound to assume a normal or average emotional reaction to being raped, a definition of mental anguish that would involve a comparison of a victim's mental distress with that normally attendant in a forcible sexual assault would be based on a false premise.

3. The standard for reviewing a defense motion for a directed verdict of acquittal based on insufficiency of the evidence in a criminal jury trial requires the trial court to consider the evidence presented by the prosecution up to the time the motion is made, to view the evidence in a light most favorable to the prosecution, and to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. The standard should be applied as well to bench trials. In *Petrella,* there was sufficient evidence to have permitted a rational trier of fact to find that the element of mental anguish was proven beyond a reasonable doubt; in *Simpson,* there was not.

4. In *Petrella,* the definition of mental anguish in CJI 20:2:11(5), that mental anguish means suffering which occurs at the time of a rape, has no basis in the criminal sexual conduct statute. The instruction is erroneous, misleading, and inadequate, and its use is disapproved. Criminal Jury Instructions do not have the official sanction of the Supreme Court. Their use is not required, and trial courts should examine them carefully before use to ensure their accuracy and appropriateness in a given case. Use of the instruction in *Petrella,* however, did not result in prejudice to the defendant. The focal point of the trial was not the emotional state of the victim, but whether the defendant was her assailant. The defendant did not request instruction on lesser included offenses and did not contest or rebut the evidence of mental anguish.

Justice LEVIN, concurring, stated that, while it has not been shown that there is an average rape victim or a typical reaction by a rape victim, the Legislature concluded that at some point a difference in degree becomes a difference in kind. It meant to distinguish between the mental distress that accompanies or follows virtually any sexual assault, and the degree of mental distress called mental anguish which aggravates the degree of criminal sexual conduct.

A judge should explain to the jurors that victims of sexual assaults suffer different degrees of mental distress depending on the facts and circumstances, their life experiences, and psychological make-ups. The jurors should be instructed that the statute distinguishes between a sexual assault where the degree of mental distress is that that may accompany or follow any

such assault and a sexual assault where the degree of mental distress constitutes mental anguish. If the jurors find that the defendant committed a sexual assault of the kind shown in *Petrella* and that mental distress accompanied or followed the assault and the degree of that mental distress constituted mental anguish, they should find the defendant guilty of first-degree criminal sexual conduct. If they find that the mental distress that accompanied or followed the sexual assault so shown did not constitute mental anguish, they should find the defendant guilty of third-degree criminal sexual conduct.

While the sufficiency of the evidence, in both bench and jury trials, is properly determined under the standard whether a rational trier of fact could have been persuaded that all the elements of the offense were established beyond a reasonable doubt, it is a separate question whether the trier of fact erred in finding the defendant guilty, a question that is to be determined under the clearly erroneous standard.

*Petrella,* affirmed.

*Simpson,* reversed and remanded.

124 Mich App 745; 336 NW2d 761 (1983) affirmed.

132 Mich App 259; 347 NW2d 215 (1984) reversed.

### OPINION OF THE COURT

1. RAPE — CONSTITUTIONAL LAW — CRIMINAL SEXUAL CONDUCT — MENTAL ANGUISH.

The provision in the criminal sexual conduct statute which permits elevation of a criminal sexual conduct offense from a lesser to a higher degree on the basis of proof of personal injury to the victim in the form of mental anguish is not unconstitutionally vague (MCL 750.520a[j], 750.520b[1][f]; MSA 28.788[1][j], 28.788[2][1][f]).

2. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — MENTAL ANGUISH.

"Mental anguish" as used in the criminal sexual conduct statute means extreme or excruciating pain, distress, or suffering of the mind (MCL 750.520a[j], 750.520b[1][f]; MSA 28.788[1][j], 28.788[2][1][f]).

3. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — MENTAL ANGUISH.

In order to support a conviction of first-degree criminal sexual conduct on the basis of the aggravating factor of mental anguish, a prosecutor must produce evidence which would cause a reasonable trier of fact to conclude beyond a reasonable doubt

that the victim suffered mental anguish (MCL 750.520a[j], 750.520b[1][f]; MSA 28.788[1][j], 28.788[2][1][f]).

4. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE — DIRECTED VERDICT OF ACQUITTAL — STANDARD OF REVIEW.

The standard for reviewing a defense motion for a directed verdict of acquittal based on insufficiency of the evidence in a criminal jury trial requires the trial court to consider the evidence presented by the prosecution up to the time the motion is made, to view the evidence in a light most favorable to the prosecution, and to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt; the standard should be applied as well to bench trials.

5. RAPE — CRIMINAL JURY INSTRUCTIONS — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — MENTAL ANGUISH.

The definition of mental anguish in the Criminal Jury Instruction on first-degree criminal sexual conduct, which provides that mental anguish means suffering which occurs at the time of a rape, is disapproved; the definition has no basis in the criminal sexual conduct statute, and is erroneous, misleading, and inadequate (MCL 750.520a[j], 750.520b[1][f]; MSA 28.788[1][j], 28.788[2][1][f]; CJI 20:2:11[5]).

6. CRIMINAL LAW — CRIMINAL JURY INSTRUCTIONS.

Criminal Jury Instructions do not have the official sanction of the Supreme Court; their use is not required, and trial courts should examine them carefully before use to ensure their accuracy and appropriateness in a given case.

CONCURRING OPINION BY LEVIN, J.

7. RAPE — CRIMINAL SEXUAL CONDUCT — JURY INSTRUCTIONS — MENTAL ANGUISH.

*In a prosecution of criminal sexual conduct, jurors should be instructed on the different degrees of mental distress which a victim may suffer depending on the facts and circumstances of a case, their life experiences, and psychological make-ups, and that the criminal sexual conduct statutes distinguish between a sexual assault where the degree of mental distress is that which may accompany or follow any sexual assault and a sexual assault where the degree of mental distress constitutes mental anguish; if the jurors find that the defendant committed a sexual assault accompanied or followed by a degree of mental distress which constituted mental anguish, they should find the defendant guilty of first-degree criminal sexual conduct; if they*

*find that the mental distress did not constitute mental anguish,
they should find the defendant guilty of third-degree criminal
sexual conduct (MCL 750.520a[j], 750.520b[1][f]; MSA
28.788[1][j], 28.788[2][1][f]).*

8. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE — STAN-
DARD OF REVIEW.

*While the sufficiency of the evidence, in both bench and jury
criminal trials, is properly determined under the standard
whether a rational trier of fact could have been persuaded that
all the elements of the offense were established beyond a
reasonable doubt, it is a separate question whether the trier of
fact erred in finding the defendant guilty, a question that is to
be determined under the clearly erroneous standard.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Peter D. Houk,* Prose-
cuting Attorney, and *Robert B. Ebersole,* Chief
Appellate Attorney, for the people in *Petrella.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Fred R. Hunter, III,*
Prosecuting Attorney, and *Michael A. Nickerson,*
Assistant Attorney General, for the people in
*Simpson.*

State Appellate Defender (by *Karla K. Good-
man*) for defendant Petrella.

State Appellate Defender (by *Peter Jon Van
Hoek*) for defendant Simpson.

RYAN, J. In these consolidated cases, we consider
the appellant's claim that the term "mental an-
guish," as included in the definition of "personal
injury" in the criminal sexual conduct (CSC) stat-
ute, MCL 750.520a(j); MSA 28.788(1)(j),[1] is uncon-
stitutionally vague.[2]

---

[1] This section states:

" 'Personal injury' means bodily injury, disfigurement, *mental an-
guish,* chronic pain, pregnancy, disease, or loss or impairment of a
sexual or reproductive organ." (Emphasis supplied.)

[2] Neither defendant identifies the specific constitutional provisions,

In addition, both cases present the question whether there was sufficient evidence of mental anguish produced at trial to support defendants' first-degree csc convictions. *Petrella* presents an issue regarding the Criminal Jury Instruction defining "mental anguish," CJI 20:2:11(5), and in *Simpson* there is a question whether the spousal privilege statute, MCL 600.2162; MSA 27A.2162, which contains an exception for a prosecution for a crime committed against either or both spouses' child, should be limited to *minor* children.

We hold:

—The statutory scheme that permits elevation of a criminal sexual conduct offense from a lesser to a higher degree, upon the basis of proof of personal injury in the form of mental anguish, offends neither the United States nor the Michigan Constitutions.

—The term mental anguish, as used in MCL 750.520a(j); MSA 28.788(1)(j), means extreme or excruciating pain, distress, or suffering of the mind.

—The evidence produced at the trial of defendant Petrella was sufficient to support his conviction for criminal sexual conduct in the first degree. However, the evidence of mental anguish presented in *Simpson* was insufficient to support his conviction for first-degree criminal sexual conduct.

—We disapprove the Criminal Jury Instruction defining "mental anguish" in CJI 20:2:11(5).

—Our resolution of the mental anguish issue in *Simpson* makes it unnecessary to decide the spousal privilege issue.

state or federal, alleged to be violated by MCL 750.520a(j); MSA 28.788(1)(j). We assume the defendants are urging a claim of denial of the due process guaranteed by the Fourteenth Amendment of the United States Constitution, and art 1, § 17 of the Michigan Constitution.

We undertake a somewhat detailed description of the facts in both cases because both defendants challenge the sufficiency of the evidence of mental anguish, the element that raises the crimes from third-degree to first-degree criminal sexual conduct.

## I. *People v Petrella*

On October 3, 1980, following a four-day jury trial in Ingham Circuit Court, defendant Jerry Petrella was convicted of breaking and entering an occupied dwelling with intent to commit first-degree criminal sexual conduct, MCL 750.110; MSA 28.305, and of first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). He was sentenced to seven and one-half to fifteen years imprisonment for the breaking and entering conviction, and ten to twenty years for the first-degree CSC conviction, with credit given for 694 days served.[3]

At trial, the complainant testified that she awoke on the morning of March 9, 1977, to find defendant standing in the doorway of the bedroom in her apartment. She testified that she recognized him as the mechanic who had previously repaired her car. The evidence established that defendant had entered the victim's apartment with a key. The victim testified that defendant sexually assaulted her and then left the apartment, locking the door from the outside.

After defendant left, the victim testified that she was very upset, frightened, and was crying as she

[3] This was defendant's third jury trial. The first, held in November, 1977, resulted in a mistrial because of improper opening remarks by the prosecutor. The second, held in March, 1978, resulted in a verdict of guilty as charged, but the convictions were reversed by the Court of Appeals because of improper cross-examination of defense witnesses concerning their religious beliefs.

telephoned a friend, who then came over to her apartment and called the police. Two police officers arrived and immediately took the victim to the gasoline station at which defendant worked in order to permit her to identify her assailant. Defendant was not there, and they proceeded to the hospital. After the examination at the hospital, they returned to the service station where the victim saw the defendant, but stated that there was something different about him which she could not articulate at the time. She testified that she was very upset at this time. She further testified that she had trouble sleeping after the incident and continued to have such trouble at the time of the trial. She testified that she missed three days from work immediately after the incident, and then periodically missed time from work due to the incident.

On cross-examination, the victim testified that she had lived at the apartment in question from July, 1976, until March 9, 1977, but that she never stayed there another night after the assault occurred.

On redirect examination, the victim testified that what was different about the defendant when she saw him at the gasoline station after the incident occurred was that he was clean shaven and his hair was cut short. On the two or three occasions that she had seen him before this time, he had had long hair and a moustache. The victim testified that, besides a rug burn on her knee, she experienced pain in her ribs and face after her assailant forced her to the floor and sexually assaulted her.

The victim's friend testified that when she spoke with the victim on the telephone following the assault, the victim was screaming and her voice was very hysterical. At first she did not recognize

the victim's voice, even though she had talked to her on the phone almost daily before that. When the friend arrived at the victim's apartment, the victim was very upset and crying. The victim seemed "frightened" and "uncomfortable" when taken to the gas station to identify the defendant. On cross-examination, the friend testified that the victim was not a person who cried easily.

Officer Theodore Rahl testified that he and his partner, Officer Helen Perry Janson, arrived at the complainant's apartment at approximately 8:50 A.M. on the day of the incident. Officer Rahl further testified that when they arrived, the complainant was wringing her hands, and was "very agitated, and very upset." Officer Janson described the emotional state of the complainant as "extremely upset and very, very nervous."

Following the close of the prosecution's proofs, defense counsel moved for a directed verdict on two grounds. The first was that the CSC statute is unconstitutionally vague and overbroad, and does not define the term "personal injury" with sufficient definiteness to survive constitutional challenge.[4] The second basis for the directed verdict request was that there was insufficient evidence to prove that defendant was the perpetrator of the offense. The trial court denied the motion.

Defendant presented a misidentification-alibi defense. Both defendant and his wife testified as to the defendant's whereabouts on the morning of the assault, and defendant denied being at the victim's apartment complex at any time on the day of the offense.

After the defense rested, defense counsel requested that no lesser included offense instructions

[4] Defense counsel did not specifically mention, in making the motion for directed verdict, the mental anguish element of the personal injury requirement.

be given. The prosecutor agreed, and none were given.

In closing arguments, the prosecutor contended that the element of personal injury had been established. He argued that "personal injury, among other things, includes abrasions, cuts, and in this case we have a carpet burn. But, most importantly, it includes mental anguish which was received by the victim at the time of the sexual assault. So, personal injury not only means bodily injury but mental injury, if you will, as a result of the act." The prosecutor reminded the jury of the complainant's testimony that she still had trouble sleeping as a result of this incident, and that she had lost a lot of time from work. He contended that this loss of sleep and absence from work were two things to be considered in determining whether mental anguish was proven.

Defense counsel argued that the complainant was mistaken in her identification of defendant. He stated:

> The Prosecutor has described the emotional state of the victim. We don't contest that. We don't deny that that was her emotional state, but that same emotional state is going to affect what it is she recalls that she saw because that's all we're left with.

Following arguments, the court instructed the jury. Discussing the elements of the CSC count, the trial judge stated:

> If I use the phrase "personal injury," . . . it means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ. *I hesitate a moment to point out personal injury then includes mental anguish.*

*  *  *

> Second element, that the Defendant caused personal injury to the complaining witness, Katherine Schmidt. Personal injury, as I have indicated to you, means bodily injury. It also includes mental anguish. *Mental anguish means suffering which occurs at the time of the alleged act.* [Emphasis supplied.][5]

The defendant made no objection to the jury instructions.

After deliberating for a little over four hours, the jury returned a verdict of guilty on both counts.

The Court of Appeals affirmed defendant's convictions. *People v Petrella,* 124 Mich App 745; 336 NW2d 761 (1983). We granted defendant's delayed application for leave to appeal, "limited to defendant's claim that the trial court improperly allowed the jury to consider mental anguish as an aggravating factor because the term 'mental anguish' is unconstitutionally vague, the jury was not properly instructed on the meaning of the term, and the evidence of mental anguish was insufficient." We directed that the case be argued and submitted together with *People v Simpson.* 419 Mich 922 (1984).

## II. *People v Simpson*

Defendant Maurice Simpson was convicted of one count of criminal sexual conduct in the first degree, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f), at a bench trial before Allegan Circuit Judge George R. Corsiglia on February 27, 1979. On May 18, 1979, Judge Corsiglia sentenced defendant to seven and one-half to fifteen years imprisonment.

_____

[5] This definition of "mental anguish" is taken from CJI 20:2:11.

The victim is the defendant's daughter, who was twenty years old at the time of the trial. She testified that, on the night of August 27, 1978, she awoke to find defendant standing in the bedroom of her apartment. When defendant refused to leave at the victim's request, she attempted to leave to go see her mother. The victim testified that when she got up to leave, she and her father began to wrestle or struggle, while she screamed and her father attempted to cover her mouth.

At the defendant's direction, they left the complainant's apartment and got into her car. Defendant got into the driver's seat, pushing the complainant to the passenger side and locking the doors, while holding onto her arm. The complainant said she wanted to go see her mother, but defendant told her no, that he wanted to talk first. He then drove to a vacant field on property owned by the complainant's grandmother. When they reached the field, the defendant threw the victim to the ground and removed her clothing. She testified that she struggled with the defendant, attempting to get away from him.

At this point, defendant told the complainant that she was more of a wife to him and that she loved him, which the complainant denied. Defendant then had sexual intercourse with the complainant. He then got up, and the complainant told him that she wanted to go home, so he picked up her clothes and gave them to her. They dressed, and got back into the car. Complainant testified that she was upset and screaming and crying, and defendant told her that she could not go home until she calmed down. Defendant then drove the complainant to her mother's house, where defendant also lived. She spoke to her mother for a few minutes, and then defendant spoke to his wife. The complainant's mother then drove with her

back to her apartment, where complainant show-ered, took some aspirin, and went to bed. The complainant testified that she was still upset and crying. She did not tell her mother what happened because she presumed she knew already from having spoken to her father. The complainant testified that she did not report the incident to the police until about a week later,[6] stating that she "never really gave it too much thought." The complainant did not claim to have suffered any bodily injury during the assault.

The next witness for the prosecution was the complainant's mother, and defendant's wife, Mar-tha Simpson. Before she testified, defense counsel objected on the basis of the spousal privilege stat-ute, MCL 600.2162; MSA 27A.2162.[7] The prose-cutor responded that he was relying on the statu-tory exception for a crime committed against the child of either or both spouses. Defense counsel maintained that this exception applied only when the child was a minor. The trial court agreed with the prosecutor that the exception applied to this case even though the complainant was twenty years old, and ruled that the witness could testify to her observations but could not testify to any communication between herself and her husband that would fall within the confidential communica-tions privilege to which the exception for a crime committed against a child is not applicable.

The victim's mother testified that when her daughter arrived at the house, she was "crying and she was full of sand . . . ." She testified that

[6] It is unclear who actually contacted the police. The complainant testified on cross-examination that she thought that her mother had done so. Her mother could not remember if she or her daughter had reported the incident. The officer in charge of the investigation testified on cross-examination that a neighbor and friend of Mrs. Simpson had contacted the post initially.

[7] See section VIII, *post,* pp 278-279.

the complainant was still crying when they arrived back at her apartment. The complainant's mother spent the rest of the night at her daughter's apartment.

After the people rested, defense counsel moved for a directed verdict on the ground that the prosecutor had not sufficiently proved the element of mental anguish. He argued that, in order to preserve the constitutionality of the statute, the mental suffering must be greater than that normally incidental to a forcible sexual assault, and that this standard had not been satisfied by the prosecutor's proofs. The court denied the motion, stating:

> I think the testimony here shows that she was trying to get away. She testified that she was striking him, he was holding her down, she was screaming and hollering at the time these things were occurring. I think that is evidence of mental anguish.
>
> Further, one other factor that is difficult to just bury our heads in the sand about is the father-daughter relationship. I think that can be taken into consideration, whether there might be mental anguish, whether you might report it to the police or whether it might be embarrassing to tell your mother.
>
> I am satisfied at least at this point that there is sufficient evidence at this time as to all of the elements for criminal sexual conduct in the first degree presented by the prosecution.

Defendant was the only witness to testify for the defense. Before defendant testified, defense counsel made a brief opening statement in which he stated that an important factor in this case was the mental state of the complainant. He contended that the defense proofs would show that there was an ongoing relationship between the complainant

and her father, that the complainant had sexually tantalized or enticed her father in the past, that the complainant had had sexual conduct with her father in the past, and that it was not necessarily of a forcible type. He contended that this relationship affected how the complainant reacted to the incident in question, and suggested that it was unlikely that she suffered mental anguish at the time the act of intercourse finally occurred.

Defendant testified to several incidents of sexual contact between him and his daughter in the months preceding the incident in question. In defendant's opinion, the complainant had tantalized him and wanted to have sex with him. Regarding the incident for which he was charged, defendant testified that he did not believe "there was any great mental anguish or pain or anything else involved. My feeling was that she protested just enough so that she could maintain—so she could say she protested and she could maintain a good girl image, which she is a nice, young lady."[8]

Defendant testified that when they got into the car, the complainant was "crying a little bit," and when she did not calm down, he offered to take her to the hospital and offered to let her drop him off at the jail. Defendant stated that it was obvious to him, "just like so many childhood experiences, that it was over and that she might have been whimpering a trifle about it, but it wasn't that bad and she just wanted to go home and see her mother, which I think is normal for a girl after

[8] When asked by defense counsel if defendant thought the complainant wanted to have sex with him at that time, defendant responded:

"I felt that she needed a sex experience to get her over one of her childhood hurdles of growing into a young lady, and I felt, seeing that I was in on the first one, it was darn near my responsibility to go through and give her a satisfying experience so she could go on and have a normal relationship as a normal young lady instead of being hurt and feeling rejected and misused, and that was why when she got to the point where she no longer was enjoying it, that I quit."

something like this happens, to go home and see her mother." Defendant testified that he saw the complainant again on the following Friday night and she "was just as contented and happy as could be." He apologized to her, and told her that the last thing he wanted to do was to hurt her. He stated that at the time of the trial he loved his daughter and thought the world of her, and believed that she loved him as well, but that she had stayed away from him after the incident was reported and went along with the officers to "protect the image of a decent young lady."

In closing argument, the prosecutor contended that the element of mental anguish had been shown:

> [The complainant] has described certain circumstances from which the Court, as the trier of fact, may find that there was mental anguish at the time of the sexual intercourse that she suffered, the fact that she was crying, the fact that she testified that she struggled, she kicked, she struck the defendant; the fact that the defendant is in fact the natural father of this young woman all points to the fact, and I think the inference that the trier of fact may draw is that she was suffering at the time that the defendant was having an act of actual sexual intercourse with her.

Defense counsel argued that the element of mental anguish required for first-degree CSC had not been shown. In rebuttal, the prosecutor once again stressed the father-daughter relationship, and suggested that the societal taboo associated with incest would cause a victim of incest to experience mental anguish and suffer a great deal, including feelings of guilt.

The trial court found the defendant guilty as charged, and in its findings of fact and conclusions of law stated:

The Court believes the testimony of Ruth. She made it clear to me, or to any reasonable person and in no uncertain terms that she wanted to go over to her mother's, that he took her out in the country, that he used force, he pushed her down, he held her down, that she was screaming and hollering, and that she was striking him, as she said, resisting him; he forced himself on her and had sexual intercourse.

Further the Court is satisfied that she suffered personal injury as set forth by the statute, by means as defined in the statute; or among other things, the mental anguish.

The statute defines mental anguish which means suffering which occurred at the time of the act. I am satisfied that she was suffering at the time this act occurred. This is demonstrated by her crying, her screaming, her hollering; that she was suffering in that apartment mental anguish of a high degree, or mental suffering in this case because of what this defendant was forcing upon her.

The Court of Appeals affirmed defendant's conviction. *People v Simpson,* 132 Mich App 259; 347 NW2d 215 (1984). We granted leave to appeal, directing the parties to include among the issues to be briefed, the following: "(1) was there sufficient evidence of mental anguish to support the conviction for first-degree criminal sexual conduct, and (2) did the trial court err by allowing defendant's wife to testify as a prosecution witness." 419 Mich 922 (1984).

III

In determining whether the element of mental anguish renders the csc statute unconstitutionally vague, we must first examine the statutory scheme.

In order to be convicted of first-degree csc, the

"actor"[9] must have engaged in sexual penetration with another person, accompanied by one of seven aggravating circumstances. One such circumstance is where "[t]he actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration." MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). An actor who engaged in sexual penetration, accomplished through the use of force or coercion, is guilty of third-degree CSC. MCL 750.520d(1)(b); MSA 28.788(4)(1)(b). Therefore, the element of "personal injury" elevates the offense of third-degree CSC to first-degree CSC.[10] First-degree CSC is a felony punishable by imprisonment for life or for any term of years. MCL 750.520b(2); MSA 28.788(2)(2). Third-degree CSC is a felony punishable by imprisonment for not more than fifteen years. MCL 750.520d(2); MSA 28.788(4)(2).

"Personal injury" is defined in the statute as "bodily injury, disfigurement, *mental anguish,* chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(j); MSA 28.788(1)(j). (Emphasis supplied.) The statute does not define "mental anguish."[11]

---

[9] "Actor" is defined as "a person accused of criminal sexual conduct." MCL 750.520a(a); MSA 28.788(1)(a).

[10] Similarly, when an actor engages in sexual contact with the victim, accomplished through the use of force or coercion, and causes personal injury to the victim, the actor is guilty of second-degree CSC. MCL 750.520c(1)(f); MSA 28.788(3)(1)(f). Second-degree CSC is a felony punishable by imprisonment for not more than fifteen years. MCL 750.520c(2); MSA 28.788(3)(2). Sexual contact accomplished through the use of force or coercion, but without the aggravating circumstance of personal injury, would result in a conviction of fourth-degree CSC, a misdemeanor "punishable by imprisonment for not more than 2 years, or by a fine of not more than $500.00, or both." MCL 750.520e; MSA 28.788(5).

[11] Besides Michigan, six other states have sex offense statutes which consider the victim's mental or emotional state to be an aggravating factor. 11 Del Code Ann, § 764 (1974); Minn Stat Ann, § 609.341(8) (1985 Cum Supp); Neb Rev Stat, § 28.318(3) (1979 Reissue); NH Rev Stat Ann, § 632-A:1 (III) (1983 Cum Supp); NJ Stat Ann, § 2C:14-1(f) (1982); NM Stat Ann, § 30-9-10(B), (C) (1978).

A number of panels of the Court of Appeals
have struggled with the difficult task of defining
the term "mental anguish," with conflicting and

New Mexico's statute defines "great mental anguish" as "psycholog-
ical or emotional damage that requires psychiatric or psychological
treatment or care, either on an in-patient or out-patient basis, and is
characterized by extreme behavioral change or severe physical symp-
toms." NM Stat Ann, § 30-9-10(B) (1978). The same statute also
defines "personal injury" as "bodily injury to a lesser degree than
great bodily harm and includes, but is not limited to, disfigurement,
*mental anguish,* chronic or recurrent pain, pregnancy or disease or
injury to a sexual or reproductive organ." (Subsection C.) (Emphasis
supplied.) All criminal sexual penetration perpetrated by the use of
force or coercion which results in great bodily harm or great mental
anguish to the victim is criminal sexual penetration in the first
degree, a first-degree felony punishable by eighteen years imprison-
ment and/or a $15,000 fine. § 31-18-15(A) (Eighteen years is the "basic
sentence," which may be altered by the sentencing judge, but the
alteration may not exceed one-third of the basic sentence. § 31-18-
15.1[C].) Criminal sexual penetration accomplished through the use of
force or coercion which results in "personal injury" to the victim is
second-degree criminal sexual penetration, punishable by a basic
sentence of nine years and/or a $10,000 fine. Criminal sexual penetra-
tion through the use of force or coercion, with no aggravating factors,
is a third-degree felony punishable by a basic sentence of three years
and/or a $5,000 fine. Finally, all criminal sexual contact perpetrated
by the use of force or coercion which results in personal injury to the
victim is fourth-degree CSC, punishable by a basic sentence of eighteen
months imprisonment.

The New Mexico Court of Appeals has rejected a constitutional
challenge to the "mental anguish" component of that state's statute.
In *State v Jiminez*, 89 NM 652; 556 P2d 60 (1976), the defendant was
convicted of second-degree criminal sexual penetration (CSP) on the
ground that he used force or coercion resulting in personal injury to
the victim. On appeal, he contended that the definition of personal
injury is vague because it includes the term "mental anguish."
Defendant also questioned whether third-degree CSP could ever occur,
implying that personal injury in the form of mental anguish would
necessarily result from a forcible sexual penetration. The court re-
sponded with a dictionary definition of anguish, and concluded: "Men-
tal anguish is distress of the mind. If such results from the use of
force or coercion, it is 'personal injury' under the statute." *Id.* at 657.
The court also disagreed with defendant's contention that mental
anguish necessarily results from every forcible rape. It stated:

"CSP could be committed by the use of force or coercion without the
victim suffering mental anguish as a result of the force or coercion.
This is also true as to other items included within the definition of
personal injury. Whether personal injury results when CSP is commit-
ted with force or coercion depends on the facts; the distinction
between second and third degree CSP based on personal injury to the
victim is not void for vagueness as a matter of law." *Id.*

generally unsatisfactory results. *People v Gorney,*
99 Mich App 199; 297 NW2d 648 (1980), was the
first case in which that Court directly addressed a
constitutional challenge to the statute. The defen-
dant had pled guilty to second-degree CSC on the
basis of his sexual contact with his stepdaughter.
In developing the factual basis for the plea, the
only reference to the complainant's personal in-
jury was the defendant's acknowledgment that she
was "upset." The defendant argued that the provi-
sion was unconstitutionally vague because, with
respect to the mental anguish element, there was
an arbitrary distinction between second-degree and
fourth-degree CSC.

After examining the CSC statutory scheme, the
*Gorney* Court stated:

> We would conclude that if a victim is "upset,"
> the element of mental anguish is not satisfied so as
> to justify a conviction of second-degree criminal
> sexual conduct. We must presume that the victim
> of any degree of criminal sexual conduct will be
> "upset" by the experience. Thus, the same act
> which may give rise to a felony charge of second-
> degree criminal sexual conduct could just as well
> constitute the misdemeanor offense of fourth-de-
> gree criminal sexual conduct. [*Gorney, supra,* p
> 206.]

The Court then cited two rules of statutory
construction: criminal statutes must be strictly
construed, and courts will construe the language of
a statute so as to give it effect rather than to
nullify it. Noting the "degree structure of the
criminal sexual conduct statute," the Court of
Appeals then "conclude[d] that the mental anguish
component of personal injury, when used to ele-
vate an offense from a fourth-degree misdemeanor
to a second-degree 15-year felony, must involve

'extreme' or 'serious' mental anguish." *Gorney, supra,* pp 206-207.[12]

The *Gorney* panel adopted this interpretation of the mental anguish element in spite of the statute's legislative history. (See n 15.) The Court noted that, when the CSC statute was first introduced in the Senate, § 520a(f) stated:

> "Serious personal injury" means extensive bodily injury, disfigurement, *extreme mental anguish or trauma,* chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ. [SB 1207, 1974 Journal of the Senate 963. Emphasis supplied.]

Recognizing that the Legislature had an opportunity to incorporate this definition in the statute ultimately enacted, but declined to do so, the Court nonetheless found "it necessary to judicially construe the term as 'extreme' mental anguish, in order to avoid finding the statute unconstitutionally vague." *Gorney, supra,* p 207.

The *Gorney* Court noted that factors which could establish "extreme" mental anguish "may include the need by the victim for psychiatric care or some interference with the victim's ability to conduct a normal life, such as absence from the workplace." *Id.* However, the Court stated that it would be futile to attempt an exhaustive list of all such factors, stating that this inquiry was better left to a case-by-case factual determination. Finding an insufficient factual basis for the defendant's plea, the Court reversed his second-degree CSC conviction.

---

[12] The Court also stated that "[i]t is possible to reach the same conclusion by application of the doctrine of *ejusdem generis* or the maxim of *noscitur a sociis,* where the meaning of a word is ascertained from the words which accompany it." *Id.*

*Gorney* was followed by a series of Court of Appeals decisions expressing doubts about the *Gorney* standard of "extreme mental anguish," but finding sufficient evidence of the mental anguish element even under the *Gorney* standard. In *People v Baker #2,* 103 Mich App 704; 304 NW2d 262 (1981), *lv den* 417 Mich 1093 (1983), the defendant was convicted by a jury of first-degree CSC for sexually assaulting a motel maid. Conceding that the evidence showed that the victim had a sore neck and was upset after the incident, the defendant argued that such evidence was insufficient to meet the personal injury requirement for first-degree CSC, relying primarily on *Gorney.* The *Baker* Court stated:

> The *Gorney* panel held that the personal injury component of mental anguish must involve "extreme" or "serious" mental anguish. While this panel may or may not agree with the *Gorney* panel in finding a clear and cogent reason for giving the statute in question a construction the Legislature plainly refused to give,[1] this panel need not reach that decision. The *Gorney* rationale held that the factors which may establish "extreme" mental anguish sufficient to justify a conviction [may include some interference with the victim's life, such as absence from the workplace].

> In the present case, the victim testified that, as a result of the trauma she suffered, she did not go back to work for some time and that, when she was able to return to work, it was at another job. Even under the *Gorney* rationale, these facts are sufficient to justify the submission of first-degree CSC to the jury.

---

[1] The legislative intent of the present statute is apparent from its legislative history. The original Senate Bill (SB 1207) used the terms "serious personal injury" and "extreme mental anguish." The initial House substitute for SB 1207 eliminated the adjective "serious" from personal injury and changed "extreme mental anguish" to "severe mental anguish." Later, the

word "severe" was struck from the bill and an amendment to reinsert this term was defeated. Therefore, the clear legislative intent was that any personal injury or any mental anguish suffice. This is noted in *People v Gorney, supra,* 207, fn 5.

*People v Adamowski,* 340 Mich 422, 429; 65 NW2d 753 (1954), holds that courts should not, without clear and cogent reason, give a statute a construction the Legislature plainly refused to give. Although this is not the appropriate case to consider the void for vagueness argument raised by defendant since the present case meets the *Gorney* "extreme" mental anguish standard, this Court notes that: (1) not all third-degree CSC involves mental anguish, *e.g.,* consensual sexual intercourse with a person who is at least 13 years of age and under 16 years of age, and (2) prosecutorial discretion with regard to the crime charged arising out of the same conduct has withstood constitutional attack, *e.g.,* larceny in a building versus shoplifting. [*Baker, supra,* pp 709-710.]

In *People v Gwinn,* 111 Mich App 223; 314 NW2d 562 (1981), *lv den* 417 Mich 949 (1983), the defendant was convicted of armed robbery, kidnapping, assault with intent to murder, and four counts of first-degree CSC for an incident in which the defendant took the complainant from the trailer in which she lived and forced her to engage in repeated sexual acts. The defendant was armed with both a knife and gun during these acts. The prosecution argued that first-degree CSC was established in one of three ways: by the use of a weapon, by bodily injury, or by mental anguish. When instructing the jury, the judge defined mental anguish as: "To suffer anguish, to be distressed with extreme pain or grief, and it may be extreme pain either of the body or the mind." *Gwinn, supra,* p 238.

A majority of the Court held that the record supported submission of the mental anguish issue to the jury. The Court described the evidence of mental anguish:

A review of the trial transcript indicates that a jury could determine that the complaining witness

was home with two children of early years when a man entered her trailer with a gun. Fearing for her children's and her own safety, she gave him some money and keys to her car and, under force of a gun, left the trailer with him. During the two hours which elapsed, the complaining witness, under the compulsion of a knife and gun, was subjected to anal, vaginal, and oral intercourse. These sexual acts were at least five in number. She did not remember at times what she was saying but did recall being told to shut up by the assailant. When asked what she was experiencing at a particular moment when a sexual act was occurring, she stated that she was frightened, angry, humiliated, and just felt awful. During the time involved, she testified that she wanted to kill the defendant with the knife but was afraid of only wounding him, and later she prayed that people would see her as she walked into the trailer park. As she pulled away from defendant, she screamed for help. After she heard a shot behind her, she started crawling on her stomach toward the people. While lying on the floor in the trailer, she was concerned about further shooting and about her children. She stated that this experience was by far the most stressful situation in her life. About an hour after the incidents occurred, when a doctor was examining her, she appeared sad and sobbed occasionally. She began to cry and scream two days later when viewing a photo of the defendant. [*Gwinn, supra,* pp 239-240.]

Judge MAHER, dissenting in part, would have held that "the prosecution failed to present sufficient evidence of extreme mental anguish under the *Gorney* standard." *Gwinn, supra,* p 257. Judge MAHER stated:

Undoubtedly, complainant experienced considerable mental distress as a result of the assault. However, complainant's reaction to the assault was comparable to the mental anguish, outrage,

and humiliation typically experienced by *any* rape victim. In order to support a conviction of first-degree criminal sexual conduct under a "mental anguish" theory, the prosecution must show substantially greater mental suffering by the complainant than the distress experienced by most such victims. In *Gorney, supra,* 207, this Court listed two possible factors which would justify a conviction under a "mental anguish" theory: (1) "the need by the victim for psychiatric care"; or (2) "interference with the victim's ability to conduct a normal life, such as absence from the workplace." Since the prosecution failed to demonstrate that the instant complainant experienced the degree of mental anguish regarded as necessary by the *Gorney* Court, I would reverse. [*Gwinn, supra,* pp 257-258.]

While expressing no opinion as to the validity of the *Gorney* panel's construction of the mental anguish element, the Court, in *People v Izzo,* 116 Mich App 255; 323 NW2d 360 (1982), *lv den* 417 Mich 945 (1983), found sufficient evidence of extreme mental anguish under the *Gorney* standard to support the defendant's first-degree CSC conviction. The Court detailed the evidence of mental anguish:

> In this case, the complainant testified that she was hysterical at the time of her encounter with defendant. She was four months pregnant and concerned about the safety of her unborn child. Those who had contact with her immediately after the incident described her as very upset. While the evidence suggests that she began to calm down as the night wore on, two days later she was still sufficiently emotionally disturbed by the incident to warrant postponement of the commencement of her husband's jail sentence. This evidence of the complainant's extreme upset at the time of the incident and the residual, albeit perhaps only short term emotional suffering which she endured

was, in our view, sufficient to support defendant's conviction of first-degree criminal sexual conduct under a personal injury-mental anguish theory. [*Izzo, supra,* pp 259-260.]

Finally, in *People v Jenkins,* 121 Mich App 195; 328 NW2d 403 (1982), a Court of Appeals panel directly confronted the *Gorney* panel's reasoning. In *Jenkins,* the complainant was sexually assaulted on the premises of a gift shop she owned. The prosecution attempted to prove the personal injury element by showing both bodily injury and mental anguish. The defendant's motion for a directed verdict on this issue was denied, and he appealed from that ruling.

The *Jenkins* panel first addressed the bodily injury component and held that the evidence was clearly sufficient to justify the defendant's conviction on this basis. However, it went on to consider whether there was sufficient evidence of mental anguish to justify submission of that theory to the jury. Discussing *Gorney* and the cases that followed it, the Court was "convinced that the level of mental anguish suffered by complainant in this case was sufficient to support a finding of personal injury, even under the *Gorney* standard," but the panel took the opportunity to express its dissatisfaction with the *Gorney* rationale. *Jenkins, supra,* p 199.

Initially, the *Jenkins* panel noted that the *Gorney* holding "is clearly contrary to the expressed legislative intent of the criminal sexual conduct statute," quoting *Baker, supra,* p 709, n 1. The *Jenkins* Court then stated:

The concern in *Gorney* was that virtually all sexual assaults involve some degree of mental anguish on the part of the victim. Since the element of mental anguish is, in itself, sufficient to

raise third-degree criminal sexual conduct to first-degree criminal sexual conduct (and fourth-degree criminal sexual conduct to second-degree criminal sexual conduct), the *Gorney* Court reasoned that the Legislature must have intended the term "mental anguish" to involve more than the mere mental distress attendant to all sexual assaults. Although the Court acknowledged that its decision was contrary to the legislative intent expressed in the legislative history of the statute, it felt compelled to impose the requirement of "extreme" or "serious" mental anguish "in order to preserve the integrity of the criminal sexual conduct statute as a whole," and "to avoid finding the statute unconstitutionally vague." *Gorney, supra,* p 207.

In our opinion, the *Gorney* panel's substitution of "extreme" mental anguish for the statutory phrase "mental anguish" is merely a semantic exercise which results in redundancy and unnecessary confusion. The term "anguish" is defined in Webster's Third New International Dictionary as "extreme pain" and "excruciating distress." Therefore, in common usage, the term "mental anguish" means extreme pain or excruciating distress of the mind. Viewed in this light, the *Gorney* panel's requirement of "extreme" mental anguish results in a redundancy.

While we agree that virtually all persons who become victims of a sexual assault involving force or coercion experience some degree of mental trauma, we do not accept the assumption that all such persons suffer mental anguish. *In our opinion, the proper inquiry to determine whether there is sufficient evidence of the mental anguish element is whether the victim suffered any significant degree of mental distress greater than that normally attendant to criminal sexual assaults accomplished by force or coercion.* [*Jenkins, supra,* pp 200-201. Emphasis supplied.]

Applying this standard to the *Jenkins* facts, the panel found sufficient evidence to justify submis-

sion of the mental anguish theory to the jury. The panel noted that the complainant involuntarily urinated when assaulted, and feared for her life during the assault. Witnesses testified that complainant was very upset, crying, and on the verge of hysteria immediately following the event. Two days after the assault, a doctor prescribed Valium for the victim's anxiety, and twelve days after the attack he discontinued the Valium and prescribed other medication for her insomnia. The Court concluded that "there was sufficient evidence that complainant suffered a degree of mental distress significantly higher than that normally suffered by a sexual assault victim." *Id.,* p 202.[13]

We come now to the Court of Appeals decisions in the cases before us. In *Petrella, supra,* p 761, the Court stated that it agreed with *Jenkins.* Noting that "first-degree criminal sexual conduct is an aggravated form of third-degree criminal sexual conduct," the Court held that, "as a matter of statutory construction, the emotional distress that a victim suffers must be more than the average victim suffers. As such, testimony that the victim is hysterical, upset, and crying is insufficient by itself to establish 'mental anguish' within the meaning of the statute." *Id.,* pp 762-763.

The Court then stated that, although it did not believe that *Gorney* was correctly reasoned, it did believe the case was correctly decided. Addressing

---

[13] See also *People v Thorin,* 126 Mich App 293; 336 NW2d 913 (1983), in which the defendant was charged with csc I, but was convicted by a jury of csc III. The panel applied the "extreme mental anguish" standard of *Gorney,* and did not mention the *Jenkins* decision. The panel found sufficient evidence of extreme mental anguish to send the issue to the jury. The Court noted that the complainant was unable to return to work for a week after the incident, remaining in the house for the entire time, and that when she did return to work she refused to work nights. She also refused to go out to her car alone at night and, according to her husband, was very frightened by any sudden noise or unexpected person in the house. *Thorin, supra,* p 301.

the sufficiency of the evidence of mental anguish in *Petrella,* the Court stated:

> In defining "extreme mental anguish," *Gorney* stated that it "may include the need by the victim for psychiatric care or some interference with the victim's ability to conduct a normal life, such as absence from the workplace." 99 Mich App 207. These factors are helpful in now determining whether the victim suffered significantly more mental distress than the average victim. We believe that one key to this determination is whether or not the victim has suffered lasting effects. In one instance, this standard may be met where the rape has so unnerved the victim that he or she is unable to go to work for a while. See *Baker #2, supra.* In another instance, the psychological effects may last inordinately long, although the victim is able to work. In *Jenkins,* the victim was given a prescription for Valium two days after the rape. Twelve days later, she discontinued the Valium and another medicine was prescribed to treat her insomnia.
>
> A similar situation is present here. The victim testified that she still had trouble sleeping three years after the rape. Furthermore, she missed three days from work. We believe that this evidence, coupled with the evidence that she was very upset and crying after the incident, is sufficient to constitute "mental anguish" under the act. [*Petrella, supra,* pp 763-764.]

Rejecting defendant's other claims of error, the Court affirmed his conviction.

On appeal from his conviction of first-degree CSC, defendant Simpson argued that there was insufficient evidence of mental anguish to support his conviction. The *Simpson* Court reiterated the premise of *Gorney* and *Jenkins* that "[s]ince any forced or coerced sexual penetration or contact is likely to cause some mental anguish to the victim,

it is necessary in some way to meaningfully distinguish the mental anguish needed to elevate the degree of the offense."

In an attempt to reconcile the *Gorney* and *Jenkins* decisions, Judge MACKENZIE stated:

> The author of this opinion was on the *Gorney* panel, and another member of this panel was on the *Jenkins* panel. Both decisions acknowledged that to elevate the offense some degree of mental anguish greater than that which could be expected to accompany any forced or coerced sexual assault is required. We find those decisions are not in fact so far apart, and may be reconciled. We hold that the mental anguish required to elevate the offense must be "extreme" or "serious," *People v Gorney, supra,* which we define as "any significant degree of mental distress greater than that normally attendant to criminal sexual assaults accomplished by force or coercion," *People v Jenkins, supra.* To the extent the use of the terms "extreme" or "serious" in *Gorney* was meant to convey even a higher degree of mental anguish than that just described, the author of this opinion no longer agrees with that decision. [132 Mich App 265.]

Turning then to the question whether there was sufficient evidence of mental anguish presented in *Simpson,* the Court stated:

> Some relevant factors are whether the victim required psychiatric care, whether there has been some interference with the victim's ability to carry on a normal life, such as absence from work, or whether there are other indications that the victim has suffered lasting effects. *People v Petrella, supra,* pp 763-764; *People v Gorney, supra,* p 207. The testimony in the present case indicated that immediately after the incident the victim was upset and crying and screamed at defendant; defendant told her she would have to calm down

before they could return to defendant's home.
When they arrived at defendant's home, the victim
was at that time upset and crying. The victim and
her mother then went to the victim's apartment,
where the victim cried some more, and her mother
spent the night at her apartment.

While there was no evidence demonstrating that
the victim required psychiatric care or that her
normal activities have been disrupted, we find
that, based on the testimony reflecting her emo-
tional distress shortly after the incident, together
with the fact that the victim's assailant was her
natural father, the trier of fact could reasonably
infer that the victim has suffered lasting emo-
tional effects and mental anguish greater than
that normally attendant to a forcible sexual pene-
tration. Any forcible sexual assault is bound to
cause some mental anguish to the victim, but
where the assailant is the victim's own father, it
can be reasonably inferred that even greater men-
tal anguish is experienced by the victim, given the
societal taboo on incest and also the victim's loss
of a healthy relationship with her father. Al-
though the victim herein testified that she did not
report the incident until about a week later be-
cause she had not "thought too much about it," we
do not find this statement to negate an inference
of extreme or serious mental anguish; rather, this
testimony could just as reasonably be interpreted
as simply reflecting the victim's all-too-natural
reluctance to bring criminal charges against her
father.

Affirmed. [*Simpson, supra*, pp 266-267.]

As is evident from the the Court of Appeals
decisions in these cases, the majority position of
the appellate court is that, in order to avoid find-
ing the "mental anguish" component of the CSC
statutory scheme unconstitutionally vague, that
term must be construed to mean "any significant
degree of mental distress greater than that nor-
mally attendant to criminal sexual assaults accom-

plished by force or coercion." *Jenkins, supra; Petrella, supra; Simpson, supra.* The question we now address is whether there are constitutional infirmities in the statute that require the adoption of the limiting construction given the term "mental anguish" by the Court of Appeals.

## IV

In *Woll v Attorney General,* 409 Mich 500, 533; 297 NW2d 578 (1980), we stated:

> A statute may be challenged for vagueness on the grounds that it
> —is overbroad, impinging on First Amendment freedoms, or
> —does not provide fair notice of the conduct proscribed, or
> —is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. [Citing *Grayned v Rockford,* 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972)].

See also *People v Howell,* 396 Mich 16, 20; 238 NW2d 148 (1976).

The United States Supreme Court has been confronted, in a variety of contexts, with the question whether statutory language is unduly vague. Recently, in *Kolender v Lawson,* 461 US 352; 103 S Ct 1855; 75 L Ed 2d 903 (1983), the Court held unconstitutional a California criminal statute requiring persons who loiter or wander on the streets to provide a "credible and reliable" identification and to account for their presence when requested by a peace officer under circumstances that would justify a stop under the standards of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Justice O'Connor, writing for the Court,

held that the statute was unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment because it failed to clarify what is contemplated by the requirement that a suspect provide "credible and reliable" identification. The Court stated:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. [Citations omitted.] Although the doctrine focuses on both actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith* [*v Goguen,* 415 US 566, 574; 94 S Ct 1242; 39 L Ed 2d 605 (1974)]. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a "standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* at 575. [*Kolender,* 461 US 357-358.]

See also *Papachristou v Jacksonville,* 405 US 156; 92 S Ct 839; 31 L Ed 2d 110 (1972), in which the Court declared a vagrancy ordinance unconstitutionally vague.

In *Rose v Locke,* 423 US 48; 96 S Ct 243; 46 L Ed 2d 185 (1975), the Court held that a Tennessee statute proscribing "crimes against nature" was not unconstitutionally vague when applied to the defendant, who had forced a female to submit to an act of cunnilingus. Noting that the fair warning requirement of the Due Process Clause prohibits the states from holding an individual crimi-

nally responsible for actions which he could not reasonably understand to be prohibited, the Court stated:

> But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." *Robinson v United States,* 324 US 282, 286; 54 S Ct 666; 89 L Ed 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. [Citations omitted.] All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.[3] [423 US 49-50.]

---

[3] This is not a case in which the statute threatens a fundamental right such as freedom of speech so as to call for any special judicial scrutiny [citing *Smith v Goguen, supra,* pp 572-573].

---

When viewed against this standard, the Court found that the phrase "crimes against nature" was "no more vague than many other terms used to describe criminal offenses at common law and now codified in state and federal penal codes." *Id.* See also *Wainwright v Stone,* 414 US 21; 94 S Ct 190; 38 L Ed 2d 179 (1973).

Initially, we note that defendants do not claim that the portion of the csc statute under which they were charged fails to provide fair notice of the conduct proscribed. *Woll, supra.* The conduct proscribed by both MCL 750.520b(1)(f); MSA 28.788(2)(1)(f) (csc I) and MCL 750.520d(1)(b); MSA 28.788(4)(1)(b) (csc III) is sexual penetration of another, accomplished through the use of force or

coercion.[14] Neither defendant contends that the statutory definitions of "sexual penetration" or "force or coercion" are unconstitutionally vague.

Instead, defendant Petrella relies upon the third vagueness ground discussed in *Woll, supra*— whether the statute "is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed." Specifically, defendant argues that the element of mental anguish, as used in the statutory definition of "personal injury," vests judges and juries with unlimited discretion to decide, on an *ad hoc* basis, whether first-degree or third-degree csc has been committed. The premise underlying defendant's argument is that any sexual penetration accomplished through the use of force or coercion is likely to cause mental anguish.

In deciding whether the term "mental anguish" is unconstitutionally vague on this basis, that term must first be defined. *Webster's New Collegiate Dictionary,* p 45, defines "anguish" as "extreme pain or distress of body or mind." It defines "mental" as "of or relating to the mind; . . . of or relating to the total emotional and intellectual response of an individual to his environment." *Id.,* p 718. Using these definitions, therefore, "mental anguish" means "extreme pain or distress of the mind." *Webster's New World Dictionary* (2d ed), p 54, defines "anguish" as "great suffering, as from worry, grief, or pain; agony." Finally, the *Random House Dictionary of the English Language (Unabridged Edition),* p 58, defines "anguish" as "excruciating or acute pain, suffering, or distress." As

---

[14] Of course, in order to be convicted of first-degree csc under § 520(b)(1)(f), the defendant must also have "cause[d] personal injury" to the victim. However, the "mental anguish" component of "personal injury" does not directly implicate the fair warning requirement of the Due Process Clause; rather, it focuses on the degree of harm to the victim.

synonyms, it lists "agony, torment, torture." Therefore, a fair dictionary definition of the term "mental anguish" would be: "extreme or excruciating pain, distress, or suffering of the mind."

In *Jenkins, supra,* p 201, the Court stated that, in common usage, the term "mental anguish" means "extreme pain or excruciating distress of the mind." As such, the *Jenkins* panel concluded that the *Gorney* panel's requirement of "extreme" or "serious" mental anguish results in "redundancy and unnecessary confusion." *Id.,* p 200.

We agree with this portion of the *Jenkins* holding. We think that the *Gorney* rationale is clearly wrong, both because its requirement of "extreme mental anguish" results in redundancy, and because it is manifestly contrary to the legislative intent, as expressed in the legislative history of the statute.[15] We hold that the term "mental anguish," in its ordinary and generally understood sense, means "extreme or excruciating pain, distress, or suffering of the mind," and that the term, so defined, is not unconstitutionally vague. The statute allows for a conviction of first-degree CSC when the trier of fact finds, beyond a reasonable

[15] As noted in *Gorney, supra,* p 207, n 5, as well as in *Baker, supra,* p 709, n 1, and *Jenkins, supra,* p 200, the original Senate Bill (SB 1207) contained the terms "serious personal injury" and "extreme mental anguish." 1974 Journal of the Senate 963. The initial House substitute for the Senate Bill eliminated the adjective "serious" from the term "personal injury" and substituted "severe" for "extreme" mental anguish. *Baker, supra.* The House passed an amendment striking the word "severe," 1974 Journal of the House 2460, and a House amendment to reinsert that term was defeated. *Id.,* p 2529. Senate Bill 1207, containing the definition of "personal injury" currently found in the statute, was then sent back to the Senate, where it was ordered enrolled. 1974 Journal of the Senate 1499.

As noted in *Baker,* we have held that courts should not, "without a clear and cogent reason to the contrary, give a statute a construction which the legislature itself plainly refused to give." *People v Adamowski,* 340 Mich 422, 429; 65 NW2d 753 (1954). For the reasons stated below, we see no clear and cogent reason justifying the *Gorney* interpretation of the term "mental anguish."

doubt, that the victim has experienced "extreme or excruciating pain, distress, or suffering of the mind." We do not think that this concept of "mental anguish" is beyond the grasp of the trier of fact, or "is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine" which offense has been committed, if any. *Woll, supra,* p 533. Judges and juries are frequently presented with factual issues relating to the mental state of a party or a witness. Bearing in mind the well-established presumption of constitutionality given legislative enactments,[16] we do not think that the term "mental anguish" is void for vagueness.

The concern expressed by defendant and the Court of Appeals is that virtually all victims of a forcible sexual assault experience some degree of mental distress or trauma. In order to give effect to the statutory scheme, which allows elevation of the degree of the offense based on the element of mental anguish, the Court of Appeals has reasoned that the Legislature must have intended that "mental anguish" mean something more than the emotional distress experienced by the "average" rape victim. Therefore, the Court of Appeals standard asks whether the victim suffered "any significant degree of mental distress greater than that normally attendant to criminal sexual assaults accomplished by force or coercion." *Jenkins, supra,* p 201.

We see no need to construe the statute in this manner. Assuming, arguendo, that every victim of a forcible sexual assault suffers some mental anguish, the prosecution, in theory, would be free to charge either first-degree CSC or third-degree CSC

---

[16] *People v McLeod,* 407 Mich 632, 657; 288 NW2d 909 (1980) (opinion of RYAN, J.); *People v McQuillan,* 392 Mich 511, 536; 221 NW2d 569 (1974).

on the basis of perpetration of a forcible sexual penetration where the victim suffers no other personal injury, and where none of the other aggravating circumstances are present. However, while virtually all rape victims may *in fact* suffer mental anguish,[17] the prosecution is limited by the availability of probative, admissible, and credible *evidence* of such anguish. In order to support a conviction of first-degree CSC, based on the aggravating factor of mental anguish, the prosecution is required to produce evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that the victim experienced extreme or excruciating pain, distress, or suffering of the mind. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

If the prosecution determines that the proof will support a conviction of first-degree CSC, it may proceed under that statute. Otherwise, a defendant will be charged with third-degree CSC. The existence of this discretion does not render the statute unconstitutional.[18]

The trier of fact may convict a defendant of first-degree CSC if it finds, beyond a reasonable doubt, that the victim has suffered extreme or excruciating pain, distress, or suffering of the mind. On appeal, a reviewing court will ask whether a rational trier of fact could have found the element of mental anguish proved beyond a reasonable doubt. This determination must necessarily be made case by case. An appellate ruling that the trier of fact's finding of mental anguish is not supported by the evidence of record is not a

[17] Studies examining the psychological reactions of rape victims are summarized below, pp 263-268.

[18] Defendants do not argue that the statutory scheme allows for an abuse of prosecutorial discretion. However, we would reject such an argument, if made. *United States v Batchelder,* 442 US 114, 124-125; 99 S Ct 2198; 60 L Ed 2d 755 (1979). See discussion below.

judicial determination that the victim did not suffer mental anguish; it is merely a determination that the prosecutor failed to produce sufficient evidence, on the record, of such anguish.

We do not think that the statutory scheme, as described above, is unconstitutional. The defendants do not contend that the statute fails to provide fair notice of the proscribed conduct; the term "mental anguish," which the prosecutor must prove beyond a reasonable doubt, is not unduly vague or indefinite; and the sufficiency of evidence of mental anguish will be reviewed on appeal, applying the *Hampton* standard of review. Therefore, we see no need to adopt the limiting construction of "mental anguish" which the Court of Appeals has espoused.

Our holding is supported by the reasoning of the United States Supreme Court in *United States v Batchelder,* 442 US 114; 99 S Ct 2198; 60 L Ed 2d 755 (1979). In *Batchelder,* the Court was faced with two overlapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968, having identical elements, both of which prohibit convicted felons from receiving firearms, but each of which authorizes different maximum penalties.[19] The precise issue presented was whether a defendant convicted of the offense carrying the greater penalty (maximum five years imprisonment) may be sentenced only under the more lenient provision (maximum two years imprisonment) when his conduct violates both statutes. In an opinion by Justice Marshall expressing the unanimous view of the Court, the Court reversed a Seventh Circuit

[19] In that respect, *Batchelder* is factually distinguishable from our cases. However, the Supreme Court's reasoning concerning the vagueness challenge is applicable to these cases in which we are concerned not with two statutes having identical elements, but with two statutes having different elements, but proscribing essentially identical conduct.

Court of Appeals decision holding that a defendant may be sentenced only under the more lenient provision, even though he had been convicted of the offense allowing the greater penalty.

In reversing, the Court noted that the majority of the Seventh Circuit panel had expressed "serious doubts about the constitutionality of two statutes that provide different penalties for identical conduct." *United States v Batchelder,* 581 F2d 626, 633-634 (1978). The Seventh Circuit panel had specifically noted that the statutes might either be void for vagueness, or implicate due process and equal protection interests in avoiding excessive prosecutorial discretion. The Supreme Court found no constitutional infirmities. Noting that a criminal statute is invalid if it fails to give a person of ordinary intelligence fair notice that his conduct is forbidden, the Court pointed out that the statutes in question "unambiguously specify the activity proscribed and the penalties available upon conviction." 442 US 123. The Court stated:

> That this particular conduct may violate both Titles does not detract from the notice afforded by each. Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied. [*Id.*]

The Court also rejected the argument that the statute allowed for an abuse of prosecutorial discretion. It noted that "[t]his Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute

under either so long as it does not discriminate against any class of defendants." *Id.* at 123-124. The Court stated that the Court of Appeals had distinguished overlapping statutes with identical standards of proof from statutory provisions that vary in some particular element. In the lower court's view, when two statutes prohibit "exactly the same conduct," the prosecutor's discretion is unfettered. The Supreme Court found "this analysis factually and legally unsound." *Id.* The Court noted that the prosecutor's decision to proceed under the statute allowing the greater penalty "[d]id not empower the Government to predetermine ultimate criminal sanctions." *Id.* at 125. Rather, it merely enabled the sentencing judge to impose a longer prison sentence. In a passage peculiarly applicable to the issue before us, the Court stated:

> More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. *Cf. Rosenberg v United States* [346 US 273, 294; 73 S Ct 1152; 97 L Ed 1607 (1953) (Clark, J., *concurring*); *Oyler v Boles,* 368 US 448, 456; 82 S Ct 501; 7 L Ed 2d 446 (1962)]. Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced. [*Id.*]

See also *People v Ford,* 417 Mich 66, 97-100; 331
NW2d 878 (1982) (opinion of WILLIAMS, J.).

Unlike the statutes involved in *Batchelder,*
§§ 520b(1)(f) and 520d(1)(b) of the CSC statute do not
contain identical standards of proof. However, the
reasoning of *Batchelder* applies with equal force to
the instant cases. We see no constitutional infirmi-
ties in the statutory scheme; therefore, we hold
that the Court of Appeals "saving" construction of
the term "mental anguish" is unnecessary.

## V

In addition to being unnecessary, the Court of
Appeals interpretation of "mental anguish" as
"any significant degree of mental distress greater
than that normally attendant to criminal sexual
assaults accomplished by force or coercion" is
based on an assumption that there is a "normal"
response to being raped; an assumption for which
none of the Court of Appeals panels have cited any
authority, and one we do not share.[20]

Several studies on the psychological reactions of
rape victims have been conducted. In Bode, *Fight-
ing Back: How to Cope With the Medical, Emo-
tional and Legal Consequences of Rape* (New York:
Macmillan Publishing Co, 1978), author Janet
Bode summarized two of these studies:

> Ann Wolbert Burgess, associate professor of
> community health nursing, and Lynda Lytle
> Holmstrom, associate professor of sociology, both
> at Boston College, are two of the leaders in the
> field of current rape research. In their first work,

---

[20] While there is a considerable amount of scholarly literature in
the fields of psychology and sociology concerned with the mental state
of rape victims, our attention has not been invited to any authorita-
tive opinion holding that there is a "normal" or "average" mental
state reaction to being raped.

using basically a sociological approach, they concentrated on adult victims. After surveying nearly one hundred victim participants at the Boston City Hospital, they discerned two periods—one of disorganization, followed by one of reorganization. During the initial response, victims stated that self-blame and fear were their predominant emotions. Besides these were varied elements such as embarrassment and anger. Bodily changes observed included headaches, gastrointestinal complaints, altered appetite, erratic sleep patterns, etc. Victims coped with these in either an expressed or controlled manner. Some became very verbal and revealed many signs of crisis. Others appeared composed, suppressing their feelings.

Reorganization, the second period, involved adjusting to the ramifications of the crime. Some moved, changed jobs, turned to others for support, expressed conflicts about their sexuality or relationships, and so forth. This was the time for putting their lives back in order. Rape is a stressful life crisis and should be treated as such.

An even more comprehensive study, mentioned in the previous chapter, was that initiated by the Philadelphia General Hospital Center for Rape Concern. With Dr. Joseph J. Peters, principal investigator; Linda Meyer, research sociologist; and Nancy Carroll, research assistant; this extensive project covered a one-year period and examined the somatic and psychological reactions of victims. They recorded responses for child, adolescent, and adult victims of sexual assault and also offered suggestions for family members. They concluded that, for all victims, it was the aggression, not the "sex," that was most traumatic. Fear and lack of control combined to make the attack a crisis situation. [*Fighting Back,* pp 32-33.]

Ms. Bode combined materials from the Philadelphia report and interviews she conducted in preparing her book. She concluded that, although general behavior patterns can be observed, there

are many variables and that a particular victim's
response depends upon her age, her mental health
before the sexual assault, the specifics of the at-
tack, and her post-rape experiences. *Fighting Back*
p 53. Ms. Bode's interviews of adult rape victims
nationwide revealed certain typical reactions in
the initial stage, which lasted from twenty-four
hours to a few weeks after the attack. These
included: (1) fear and anxiety; (2) distress or fear of
all men; (3) anxiety about others' reactions to
learning about the rape; (4) apprehension about
the effect of the rape on the victim's sex life; (5)
guilt and self-blame. The author noted that, in
some cases, these fears combined to overwhelm the
victims, who suffered nervous breakdowns. In less
radical cases, the anxieties impaired the victim's
daily routines, including eating and sleeping pat-
terns, the occurrence of nightmares, decision mak-
ing, and the development of obsessions or phobias,
especially with cleanliness.

Ms. Bode discovered a second stage, occurring in
the months after the attack, in which many vic-
tims retreated within, denying or rationalizing
their earlier feelings about the rape. Many victims
stopped talking about the rape and returned to
their normal lives, suppressing their anxiety, fear,
and possible anger. As these feelings became inter-
nalized, the victims deteriorated, becoming in-
creasingly depressed and suffering physical com-
plaints such as fatigue, sore throats, and gastroin-
testinal problems. They began once again to scruti-
nize the rape, and their part in it, as well as to be
fearful. As many victims began limiting their lives
because of this fear, their anger began to grow.

Ms. Bode also noted long-range effects, with the
most predominant one being a resurgence of fear,
years after the rape, in situations which would not
generate concern or apprehension in women who

had never been rape victims. The author also noted that many times victims of rape do not receive the same support, understanding, compassion and kindness from others which they would if they were experiencing some other life crisis, such as the death of a loved one or being the victim of a serious accident.

Journalist Susan Brownmiller also studied the psychological and emotional reactions of rape victims. In *Against Our Will: Men, Women and Rape* (New York: Simon & Schuster, 1975), p 361, she concludes:

> When a woman survives the physical trauma of rape, her emotional reaction may take many forms. She may cry, scream or tremble; she may be rigidly composed; she may smile inappropriately or tell the story with bursts of laughter. There is no uniform response to a rape, or a uniform time for recovery.

A related development is the increasing attempts by prosecutors across the country to introduce expert testimony of "rape trauma syndrome" to prove that sexual intercourse was nonconsensual. See "The rape trauma syndrome: New weapon for prosecutors," Nat'l L J, Vol 8, No 7, pp 1, 20-21 (October 28, 1985).[21] One expert describes the rape trauma syndrome in this way:

> "The impact of rape on the victim is manifold. There is, for the victim, threat and actuality of physical harm that may cover the spectrum from bruises to maiming and death. In addition, there is the acute and severe loss of control by the victim

---

[21] While several state courts have permitted such expert testimony, others have not, ruling that such evidence has not reached the level of scientific reliability required to permit its introduction. See *State v Saldana,* 324 NW2d 227 (Minn, 1982).

over her circumstances. Furthermore, there is intrusion into her privacy in the most intensely personal way imaginable. As a result of the trauma of rape there are many different emotional reactions. Commonly one will find fear and panic based on what has actually happened or based on what might be imagined to happen as the result of a repeated attack. In addition, the individual may well feel shame and guilt over having been unable to prevent or stop the attack. Anger is a very common reaction and in addition there may be confusion. Very frequently the individual will have a period of depression, often occurring after an apparent period of stability. The range of short term and long lasting effects involves a number of mental disorders including, in rare individuals, the onset of psychosis, more commonly recognized as a 'nervous breakdown.' It is common experience that some of the more severe and long lasting disorders will frequently require long periods of psychiatric care and can be manifested by significant disability for the individual. A common aspect of rape is that the victim often feels isolated and helpless during and immediately after the episode. . . . During this phase a frequent phenomenon is that guilt and shame will make it quite difficult for the individual immediately to establish the ability to express herself completely." [Affidavit of Dr. George G. Gardiner, Professor of Psychiatry at Hahnemann Medical College and Hospital in Philadelphia, quoted in *In re Pittsburgh Action Against Rape*, 494 Pa 15, 39; 428 A2d 126 (1981) (Larsen, J., *dissenting*).]

Despite the behavioral patterns of rape victims that have been observed (labeled by some as "rape trauma syndrome"), we are not persuaded that it is psychologically or sociologically sound to assume that there is a "normal" or "average" emotional reaction to being raped. If there is no normal response to rape, then a definition of "mental anguish" that involves a comparison to the degree

of mental distress *normally* attendant to a forcible sexual assault is based on a false premise.

## VI

We come now to the question whether there was sufficient evidence of mental anguish presented in these cases to support the first-degree CSC convictions of defendants Petrella and Simpson.

### A. *Standard of Review*

The standard for reviewing a defense motion for a directed verdict based on insufficiency of the evidence in a criminal jury trial was set forth in *People v Hampton*, 407 Mich 354; 285 NW2d 284 (1979), *cert den* 449 US 885 (1980). That standard, as stated by former Chief Justice COLEMAN, is:

> In summary, the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made [*People v Garcia*, 398 Mich 250; 247 NW2d 547 (1976)], view that evidence in a light most favorable to the prosecution, *People v Vail*, 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, *Jackson* [*v Virginia*, 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979)]. [*Hampton, supra,* p 368.]

*Hampton* was a jury trial. We have never decided whether the standard set forth in *Hampton* is applicable to bench trials as well.

In *People v Triplett*, 105 Mich App 182; 306 NW2d 442 (1981), *remanded on other grounds* 414 Mich 898; 323 NW2d 7 (1982), a bench trial, the Court of Appeals noted that although *Hampton*

involved a jury conviction, this Court relied upon
*Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L
Ed 2d 560 (1979), a nonjury criminal case, in
reaching its conclusion. The panel also noted that
prior to *Hampton,* the standard for reviewing
sufficiency of the evidence questions in bench tri-
als was stated in *People v Hubbard,* 19 Mich App
407, 413; 172 NW2d 831 (1969), *aff'd* 387 Mich 294;
196 NW2d 768 (1972), as a requirement that the
appellate court "review the entire record to deter-
mine whether the trial judge clearly erred." Find-
ing it unclear whether *Hampton* or *Hubbard* ap-
plied to nonjury cases, the Court analyzed the
facts of *Triplett* under both standards of review. A
similar approach was taken in *People v Love,* 127
Mich App 596; 339 NW2d 493 (1983), *lv gtd* 422
Mich 856 (1985), as well as in the Court of Appeals
decision in *Simpson.* In other cases, the Court of
Appeals has simply applied the *Hampton* standard
of review to criminal bench trials, without discus-
sion of whether or not that is the appropriate
standard.[22]

We think the *Hampton* standard should also be
applied in reviewing sufficiency of evidence ques-
tions in bench trials. As noted by the *Triplett*
Court, in *Hampton* we relied upon *Jackson, supra.*
*Jackson* involved habeas corpus review of a state
court conviction entered after a bench trial. There-
fore, we think it clear that the *Jackson-Hampton*

---

[22] See, *e.g., People v John,* 129 Mich App 664, 665; 341 NW2d 861
(1983), *lv den* 418 Mich 956 (1984); *People v Nicen,* 123 Mich App 258,
260; 333 NW2d 243 (1983); *People v Pawlak,* 120 Mich App 585, 589;
327 NW2d 528 (1982), *lv den* 417 Mich 1074 (1983); *People v Olszew-
ski,* 119 Mich App 455, 458; 326 NW2d 394 (1982); *People v Marlin
Smith,* 119 Mich App 91, 94; 326 NW2d 434 (1982); *People v Gregory
Johnson,* 112 Mich App 483, 489; 316 NW2d 247 (1982); *People v
Buchanan,* 107 Mich App 648, 650; 309 NW2d 691 (1981); *People v
Carl Johnson,* 99 Mich App 547, 557; 297 NW2d 713 (1980), *lv den* 412
Mich 928 (1982); *People v Oster (On Resubmission),* 97 Mich App 122,
135; 294 NW2d 253 (1980), *lv den* 411 Mich 920 (1981).

standard of whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt should also be applied to bench trials.

## B. *Sufficiency of Evidence of Mental Anguish in* Petrella *and* Simpson

Before examining the testimony presented in these cases to determine whether the element of mental anguish was sufficiently established, it may be helpful to list the factors or type of evidence the Court of Appeals panels have considered in determining whether "mental anguish" has been proven beyond a reasonable doubt. We stress that each case must be decided on its own facts, and that no single factor listed below should be seen as necessary to a finding of mental anguish. These are some of the factors which the Court of Appeals has considered:

(1) Testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault.

(2) The need by the victim for psychiatric or psychological care or treatment.

(3) Some interference with the victim's ability to conduct a normal life, such as absence from the workplace.

(4) Fear for the victim's life or safety, or that of those near to her.

(5) Feelings of anger and humiliation by the victim.

(6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.

(7) Evidence that the emotional or psychological effects of the assault were long-lasting.

(8) A lingering fear, anxiety, or apprehension

about being in vulnerable situations in which the victim may be subject to another attack.

(9) The fact that the assailant was the victim's natural father.

Keeping these factors in mind, we now turn to an examination of the evidence of mental anguish presented in *Petrella* and *Simpson.*

The complainant in *Petrella* testified that she was fearful during the assault, and that afterwards she was very upset, frightened, and was crying. Her friend testified that when the complainant phoned her, she was screaming and her voice was hysterical, such that the friend did not initially recognize it. When her friend arrived at the complainant's apartment, the complainant was very upset and crying, and was frightened and uncomfortable when taken to the gas station to identify the defendant. The complainant's friend also testified that the complainant was not a person who cried easily. The complainant further testified that she had trouble sleeping after the incident, and continued to experience insomnia at the time of the trial. She missed three days from work immediately after the incident, and then periodically missed work from time to time due to the assault. She never again stayed in that apartment after the assault occurred. The officers who responded to complainant's call testified that she was wringing her hands, was very agitated, very upset, and very, very nervous.

Keeping in mind both the definition of "mental anguish" we adopt today ("extreme or excruciating pain, distress, or suffering of the mind") and the standard for reviewing the sufficiency of the evidence (viewing the evidence in a light most favorable to the prosecution, could a rational trier of fact have found that the element of "mental anguish" was proven beyond a reasonable doubt), we think

that the evidence presented in *Petrella* supported
a finding of mental anguish. We are satisfied that
the prosecution proved, beyond a reasonable doubt,
that the victim suffered severe emotional and psy-
chological consequences following the assault, re-
sulting in a major disruption, or crisis, in her life.
We agree with the prosecutor that, besides the
evidence of crying, hysteria, fright, loss of sleep,
and absence from the workplace, it is significant
that the victim never stayed another night in the
apartment in which she was raped. We conclude
that a rational trier of fact could have found that
the element of mental anguish was proven beyond
a reasonable doubt in *Petrella*.[23]

In *Simpson,* the complainant testified that she
was upset, screaming, and crying after the inci-
dent. She continued to be upset and crying when
she arrived back at her apartment, where she took
a couple of aspirins and went back to bed. She
testified that she did not report the incident to the
police because she "just never really gave it too
much thought."[24] On cross-examination, the com-
plainant testified that she was "probably crying all
the way through" during the incident as well. The
complainant testified that she just kept repeating
that she wanted to go home.

The complainant's mother verified that the com-
plainant was crying when she and her father
arrived at the house, and that she was still crying
when she got back to her apartment.

---

[23] We note that the prosecutor also contends that the personal
injury requirement is satisfied by the evidence of bodily injury (rug
burn, soreness in ribs and face) presented. Since we hold that the
evidence of mental anguish was sufficient, we need not address this
contention.

[24] Defendant Simpson contends that this fact disproves a finding of
mental anguish. However, we question the negative implication defen-
dant urges. On this point, we agree with the Court of Appeals, which
stated that "this testimony could just as reasonably be interpreted as
simply reflecting the victim's all-too-natural reluctance to bring crimi-
nal charges against her father." 132 Mich App 267.

The defendant testified, without objection, that he did not believe "there was any great mental anguish or pain or anything else involved." He testified that afterward, when they got back into the car, she was "crying a little bit," and that when she did not calm down, he offered to take her to the hospital. At another point, defendant testified that "she might have been whimpering a trifle about it," "just like so many childhood experiences." On cross-examination, defendant testified that when they first reached the field, the complainant was not crying or "shook up" at all.

The courts below inferred that the emotional distress experienced by the victim was increased by the fact that she was raped by her father. For ease of reference, we repeat here the Court of Appeals discussion of this issue:

> While there was no evidence demonstrating that the victim required psychiatric care or that her normal activities have been disrupted, we find that, based on the testimony reflecting her emotional distress shortly after the incident, together with the fact that the victim's assailant was her natural father, the trier of fact could reasonably infer that the victim has suffered lasting emotional effects and mental anguish greater than that normally attendant to a forcible sexual penetration. *Any forcible sexual assault is bound to cause some mental anguish to the victim, but where the assailant is the victim's own father, it can be reasonably inferred that even greater mental anguish is experienced by the victim, given the societal taboo on incest and also the victim's loss of a healthy relationship with her father.* [132 Mich App 266. Emphasis supplied.]

Viewing the evidence in the record in a light most favorable to the prosecution, we think that

there was insufficient evidence of "mental anguish" presented in *Simpson* to justify the trier of fact's conclusion that "mental anguish" was proven beyond a reasonable doubt.

We have little doubt that the forcible rape of a twenty-year-old daughter by her natural father may ordinarily cause the victim to suffer "extreme or excruciating pain, distress, or suffering of the mind," and indeed may have had that result in this case. The question before us, however, is not whether the victim in this case suffered such mental anguish; it is whether the prosecution produced sufficient evidence at trial to prove, beyond a reasonable doubt, that she did.

We conclude, after a careful examination of the record, that the prosecution failed to produce evidence of that quality at trial, and thus we are unable to sustain the trial court's finding that the victim suffered mental anguish. Aside from the testimony that the complainant was crying and upset, the only other factor relied upon by the lower courts was the inference that the emotional distress experienced by the victim must have been aggravated by the fact that defendant is the complainant's natural father. The question to be decided is whether, *on this record,* such an inference was supportable.

We have searched the record in vain for any evidence justifying such an inference. While the testimony clearly established the existence of the familial relationship of the defendant and the complainant, there was no testimony, by the complainant or anyone else, that this fact exacerbated the complainant's emotional distress.

While it may be quite reasonable to expect that, in ordinary circumstances, a sexual assault by a father upon his daughter would, because of the

familial relationship, intensify the mental suffering of the daughter, we are not free to assume such an effect in every case. The record must contain either direct evidence of intensified mental suffering, such as specific testimony on the point from the victim, or perhaps circumstantial evidence of such suffering, as an inference properly to be drawn from other facts in the record. While the trier of fact may draw reasonable inferences from facts of record, it may not indulge in inferences wholly unsupported by any evidence, based only upon assumption. *People v Plautz,* 28 Mich App 621, 623; 184 NW2d 761 (1970); *People v Weyonen,* 247 Mich 308, 311; 225 NW 552 (1929). We hold that the trial court's inference that the familial relationship between defendant and the complainant contributed to the complainant's emotional distress, so as to constitute mental anguish as we have defined it today, is unsupported by the evidence of record.

The only remaining evidence of mental anguish was the testimony that the complainant was crying and upset. We do not think that this evidence, standing alone, rises to the level of "extreme or excruciating pain, distress, or suffering of the mind."

We hold that a rational trier of fact could not reasonably conclude, on the record before us, that the complainant suffered mental anguish in this case because the prosecutor failed to produce sufficient evidence on that element of the offense. Therefore, we reverse defendant's conviction of first-degree criminal sexual conduct. Since defendant concedes that the evidence was sufficient to support a conviction of third-degree criminal sexual conduct, see below, n 26, we remand for entry of a conviction of third-degree criminal sexual conduct and resentencing.

## VII

*Petrella* presents another issue for our consideration. In his instructions to the jury on the elements of first-degree CSC, the trial judge included the definition of mental anguish found in CJI 20:2:11(5): "Mental anguish means suffering which occurs at the time of the alleged act." The commentary to this instruction states: "The Committee noted that mental anguish should clearly be stated to be mental anguish at the time of the act, not remorse."

Defendant Petrella argues that this instruction suffers from the same vagueness problems as the statute itself because it fails to inform the jury that it must find a significant degree of mental anguish greater than that normally attendant to forcible criminal sexual assaults. Contending that the instruction is clearly misleading and erroneous, he argues that giving this instruction was error requiring reversal, even though he did not object to it being given at trial. The prosecutor contends that if the jury instruction is erroneous it constituted harmless error not warranting reversal.

Initially, we note that defendant's failure to object to the jury instruction in question will ordinarily preclude appellate review, absent manifest injustice. *People v Woods,* 416 Mich 581, 610; 331 NW2d 707 (1982), *cert den* 462 US 1134 (1983). While we do not think that the giving of CJI 20:2:11(5) resulted in manifest injustice to defendant Petrella (see discussion, below), we take this opportunity to disapprove of this jury instruction, which we find to be erroneous and misleading.

There is nothing in the CSC statute to suggest that the mental anguish element must be limited to "suffering which occurs at the time of the

alleged act." In fact, many of the Court of Appeals decisions interpreting that phrase focus on whether or not the psychological or emotional reactions of the rape victims were long-lasting. Moreover, there is nothing in the statute to suggest that the Legislature intended to limit temporally any of the elements of "personal injury." Indeed, "disfigurement," "chronic pain," and "loss or impairment of a sexual or reproductive organ" all suggest the prospect of permanent or long-lasting injuries. In summary, we see absolutely no basis for the conclusion that the mental anguish element must be limited to mental suffering which occurs at the time of the assault. Therefore, we conclude that CJI 20:2:11(5) is erroneous, misleading, and inadequate. It is error for the trial court to give an erroneous or misleading jury instruction on an essential element of the offense. *People v Pepper,* 389 Mich 317, 322; 206 NW2d 439 (1973); *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967); *People v MacPherson,* 323 Mich 438, 448; 35 NW2d 376 (1949).

Moreover, we remind the bench and bar once again that the Michigan Criminal Jury Instructions do not have the official sanction of this Court. Their use is not required, and trial judges are encouraged to examine them carefully before using them, in order to ensure their accuracy and appropriateness to the case at hand.

Although we find CJI 20:2:11(5) to be an inaccurate statement of the law, we do not think that the inclusion of this instruction resulted in any prejudice whatever to defendant Petrella. The defense presented was clearly one of misidentification-alibi. In making the motion for a directed verdict following the close of the prosecution's proofs on the ground that the csc statute is unconstitutionally vague, defense counsel did not even

mention the mental anguish element of the personal injury requirement. After the defense rested, defense counsel requested that no lesser included offense instruction be given, and the prosecutor agreed. Since no instruction on third-degree CSC was given to the jury, a conviction of third-degree CSC based on the absence of proof of "mental anguish" could not have resulted. Moreover, in closing argument, defense counsel specifically stated that "[w]e don't contest [the emotional state of the victim]." Rather, he argued that that emotional state affected the victim's ability to identify her assailant.

It is clear that the focal point of this trial was not the emotional state of the victim, but whether defendant was her assailant. We think it crucial that defendant specifically requested that no lesser included instructions be given. We also agree with the prosecutor that defense counsel did not contest or rebut the evidence of mental anguish. Therefore, we do not think defendant Petrella was prejudiced in any way by the trial court's instruction on "mental anguish."[25]

## VIII

The final issue for our consideration, presented only in *People v Simpson,* concerns the competency of defendant Simpson's wife to testify under the spousal privilege statute, MCL 600.2161; MSA 27A.2161.

Because our conclusion in *Simpson* is that there has been a failure of proof of the mental anguish element of the offense charged, necessitating reduction of the conviction to the necessarily in-

---

[25] As an alternative to CJI 20:2:11(5), trial courts may choose to instruct the jury in accordance with the common, dictionary definition of mental anguish, *i.e.,* "extreme or excruciating pain, distress, or suffering of the mind."

cluded offense of third-degree criminal sexual conduct of which the defendant concedes he is guilty, it is unnecessary for us to decide the spousal privilege issue.[26]

For the reasons stated above, the Court of Appeals decision in *Petrella* is affirmed.

The Court of Appeals decision in *Simpson* is vacated and that case is remanded to the trial court for entry of a judgment of conviction of third-degree criminal sexual conduct, and resentencing.

WILLIAMS, C.J., and BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred with RYAN, J.

LEVIN, J. (*concurring*). I agree that it has not been shown that there is an average rape victim or a typical reaction by a rape victim. Nevertheless it is manifest that the Legislature concluded that at some point a difference in degree becomes a difference in kind, and manifestly this does occur as the differing results in *Petrella* and *Simpson* indicate.

While the Court of Appeals in *Jenkins* erred in positing that there is a degree of mental distress

---

[26] In arguing that the evidence of mental anguish was insufficient, defendant Simpson states that "the evidence was sufficient to support a conviction [of] third-degree CSC." He requests that his conviction of first-degree CSC be reversed and either: (1) the case be remanded for entry of conviction on third-degree criminal sexual conduct and resentencing, or (2) the case be remanded for a new trial.

We view these statements as a concession by defendant that he is guilty of third-degree criminal sexual conduct. Therefore, we find it unnecessary to address defendant's claim that his wife's testimony was erroneously admitted under an exception to the spousal privilege statute, MCL 600.2161; MSA 27A.2161.

Moreover, we have carefully examined the record, and we would conclude that, even excluding Mrs. Simpson's testimony, and without regard to the defendant's concession, there was ample evidence of the elements of third-degree criminal sexual conduct, MCL 750.520d(1)(b); MSA 28.788(4)(1)(b), to support defendant Simpson's conviction of that lesser-included offense.

that "normally" attends criminal sexual assaults accomplished by force or coercion, the essential approach and direction of the Court of Appeals was correct. Although it has not been shown that there is a normal degree of mental distress or what it might be, the Legislature plainly meant to distinguish between the mental distress that accompanies or follows virtually any sexual assault, which, on the facts shown in *Simpson,* it made the offense of csc iii and that degree of mental distress, described as "mental anguish," that aggravates the degree of the offense, as in *Petrella,* to csc i.

A judge should explain to the jurors that victims of sexual assaults suffer different degrees of mental distress depending on the facts and circumstances, their life experiences, and psychological make-ups. The jurors should be instructed that the statute distinguishes between a sexual assault where the degree of mental distress is that that may accompany or follow any such assault and a sexual assault where the degree of mental distress constitutes mental anguish. If the jurors find that the defendant committed a sexual assault of the kind shown in *Petrella* and that mental distress accompanied or followed the assault and the degree of that mental distress constituted mental anguish, it should find the defendant guilty of csc i. If it finds that the mental distress that accompanied or followed the sexual assault so shown did not constitute mental anguish, it should find the defendant guilty of csc iii.

I also agree with the majority that the sufficiency of the evidence is not determined under the clearly erroneous standard, and that in both bench and jury trials the constitutional standard—whether a rational trier of fact could have been

persuaded that all the elements of the offense were established beyond a reasonable doubt—applies. While that is indeed the correct standard where the defendant seeks a directed verdict, a person may, although there is sufficient evidence, challenge the correctness of the findings of the trier of fact. The question whether there was sufficient evidence to submit the cause to the trier of fact and the question whether the trier of fact erred in finding the defendant guilty are separate questions. A different standard, the clearly erroneous standard, applies where the defendant claims that a judge sitting as trier of fact erred in finding him guilty.