*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 7, 2019

Plaintiff-Appellee,

v

No. 342349
Manistee Circuit Court
LC No. 17-004721-FC

GREGORY JAMES BULERSKI,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(f) (actor causes personal injury to victim and force or coercion is used to accomplish act), and two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration of victim between 13 and 16 years of age). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 30 to 60 years' imprisonment for each offense. Because there was sufficient evidence to support defendant's convictions and his sentence was proportionate, we affirm.

## I. FACTS

On January 14, 2017, when the victim, KB, was 14 years old, she and her best friend, SB (defendant's 16-year-old niece), agreed to babysit defendant's young son while defendant went out drinking. Defendant returned at some time after 12:30 a.m. the following morning and indicated that he wanted to go to Manistee to purchase cigarettes, gasoline, and more alcohol. SB, KB, and defendant's son accompanied him there and then to other locations. During the car trip, while SB drove, defendant rubbed KB's inner thighs. He then digitally penetrated KB's vagina and asked her to sit on his lap. According to SB, KB refused, and defendant stated, "Then you want to go home." Earlier that day, KB had explicitly told defendant that she did not want to go home because she would be forced to confront her grandfather, who had previously choked her. When KB reiterated that she did not want to go home, defendant replied, "So you're going to come sit on my lap." KB acquiesced, and defendant kissed her and digitally penetrated her vagina. Defendant then asked KB to climb over the seat and remove her clothes. When KB did

not respond, defendant lifted her up and threw her over the seat into the back cargo compartment of the SUV. Defendant removed his and KB's pants, and he penetrated her vagina with his penis. KB told defendant to stop, but to no avail. This continued for several minutes, until SB purposefully drove the vehicle into a snowbank.

At approximately 7:00 a.m. that same morning, KB was taken to the hospital. Dr. Jennifer Reinink conducted a sexual assault examination on KB, which revealed some redness and swelling between KB's vagina and anus. During the examination, KB informed Reinink that defendant bit her left ear and left nipple. Reinink collected several swabs for DNA testing, noting as she did that while KB received the examination and treatment, she was "tearful at times, . . . angry, tired, [and] hungry." A police officer arrived at the hospital at approximately 10:00 a.m. When he first made contact with KB, she was curled into the fetal position, attempting to hide her face as she cried. DNA matching defendant's was present in samples taken from KB's breasts, neck, and ears; additionally, DNA matching KB's was detected in samples taken from defendant's underwear.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence presented was insufficient to prove the elements of CSC-II and CSC-III beyond a reasonable doubt. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence relied upon to sustain a criminal conviction. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). In so doing, this Court must review the evidence in the light most favorable to the prosecution. *Id*. at 175. The question is not whether *any* evidence existed that could support the conviction; rather, the question is whether the evidence presented proved—beyond a reasonable doubt—the essential elements of the crimes for which the defendant was accused. *Id*.

#### 1. SECOND-DEGREE CRIMINAL SEXUAL CONDUCT

MCL 750.520c(1)(f) provides, in relevant part:

A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:

\* \* \*

(f) The actor causes personal injury to the victim and force or coercion is used to accomplish the sexual contact. Force or coercion includes, but is not limited to, any of the circumstances listed in section 520b(1)(f).

In this case, defendant does not contest the fact that he engaged in sexual contact with KB. Instead, defendant contends that the evidence did not prove, beyond a reasonable doubt, that he

caused KB any personal injury as required under MCL 750.520c(1)(f). Pursuant to MCL 750.520a(n), " '[p]ersonal injury' means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." In order to prove mental anguish, " 'the prosecution is required to produce evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that the victim experienced extreme or excruciating pain, distress, or suffering of the mind.' " *People v Mackle*, 241 Mich App 583, 596-597; 617 NW2d 339 (2000), quoting *People v Petrella*, 424 Mich 221, 259; 380 NW2d 11 (1985). This does not mean that the prosecution must prove the existence of mental anguish beyond that "experienced by the 'average' rape victim." *Petrella*, 424 Mich at 258.[1] Determinations as to the existence of sufficient mental anguish must be made on a case-by-case basis. *Id*. at 259, 270. Factors that may be considered include:

> (1) Testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault.
>
> (2) The need by the victim for psychiatric or psychological care or treatment.
>
> (3) Some interference with the victim's ability to conduct a normal life, such as absence from the workplace.
>
> (4) Fear for the victim's life or safety, or that of those near to her.
>
> (5) Feelings of anger and humiliation by the victim.
>
> (6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.
>
> (7) Evidence that the emotional or psychological effects of the assault were long-lasting.
>
> (8) A lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack.
>
> (9) The fact that the assailant was the victim's natural father. [*Id*. at 270-271.]

No single one of these factors is necessary to a finding of mental anguish. *Id*. at 270.

Witness testimony established that KB cried during her stay at the hospital. Indeed, when the responding police officer first made contact with KB, she was curled into the fetal position, actively trying to hide her face while she continued to cry. Dr. Reinink noted that KB also displayed anger while she received treatment, amidst concurrent feelings of grief, exhaustion, and hunger. Further, KB testified that she began attending counseling sessions approximately

---

[1] Indeed, our Supreme Court has previously rejected the notion that there is some "normal" or "average" emotional response to being raped. See *Petrella*, 424 Mich at 267.

one week after the incident, and has continued to do so ever since. KB expressly indicated her desire to continue participating in counseling in the future, and she acknowledged that the incident still weighed on her to some degree. These facts—at a minimum—bear directly on the first, second, fifth, and seventh factors outlined in *Petrella*, 424 Mich at 270-271. Although evidence need not be overwhelming to establish mental anguish beyond a reasonable doubt, see *People v Himmelein*, 177 Mich App 365, 377; 442 NW2d 667 (1989), the evidence in this case overwhelmingly supported the jury's determination, beyond a reasonable doubt, that KB "experienced extreme or excruciating pain, distress, or suffering of the mind" as required under *Mackle*, 241 Mich App at 596-597.[2]

Defendant next argues that the evidence was insufficient to support a finding, beyond a reasonable doubt, that he used force or coercion in order to facilitate unlawful sexual contact with KB. Force or coercion in CSC-II cases can be established in the same manner as in CSC-I cases. MCL 750.520c(1)(f). MCL 750.520b(1)(f)(*i*) provides, in relevant part:

> Force or coercion includes, but is not limited to, any of the following circumstances:
>
> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.
>
> (*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.
>
> (*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.
>
> (*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.
>
> (*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

KB's testimony established that, at the time of the incident, defendant attempted to verbally persuade her to climb over the vehicle's seat and remove her clothes. When she did not comply,

---

[2] Defendant argues that testimony concerning the redness and swelling that KB experienced between her vagina and anus was insufficient to warrant a finding of bodily injury. However, we need not discuss the merits of that assertion, because evidence of KB's mental anguish was sufficient to establish the personal injury element of CSC-II. See *Petrella*, 424 Mich at 272 n 23.

defendant physically forced her over the seat. At that point, defendant began to engage in sexual intercourse with KB, despite her pleas for him to stop. A victim's testimony, alone, is sufficient to sustain a conviction under MCL 750.520c. MCL 750.520h; *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016). Accordingly, KB's testimony was sufficient to establish force or coercion under MCL 750.520b(1)(f)(*i*).

### 2. THIRD-DEGREE CRIMINAL SEXUAL CONDUCT

Defendant further contends that the evidence presented was insufficient to sustain his CSC-III convictions. Under MCL 750.520d(1)(a),

> [a] person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:
>
> > (a) That other person is at least 13 years of age and under 16 years of age.

"Sexual penetration," as defined by MCL 750.520a(r), "means sexual intercourse . . . or any other intrusion, however slight, of any part of a person's body . . . , but emission of semen is not required."

KB testified that she was 14 years old at the time of the incident. She further indicated that defendant vaginally penetrated her with his penis and his finger. Both of these acts constitute "sexual penetration" as defined under MCL 750.520a(r). Further, as previously discussed, a victim's testimony, alone, is sufficient to sustain a conviction under MCL 750.520d. MCL 750.520h; *DeLeon*, 317 Mich App at 719. Accordingly, KB's undisputed testimony was enough to support the jury's finding that defendant engaged in sexual penetration with a minor between the ages of 13 and 16 under MCL 750.520d(1)(a).

Moreover, significant DNA evidence was presented at trial, lending further support for the jury's verdict.[3] Witness testimony established that DNA matching defendant's was detected on swabs of KB's breasts and ears. Female DNA matching KB's was also detected in samples of defendant's underwear. The probability that KB was incorrectly identified as the contributor was

---

[3] Defendant argues that the absence of DNA evidence in vaginal and cervical swabs necessarily indicates that he did not sexually penetrate KB. Defendant's argument fails for two reasons: (1) because DNA matching defendant's known Y chromosome haplotype *was* detected on KB's vaginal and cervical swabs, and (2) because defendant fails to cite any authority suggesting that the absence of DNA evidence categorically precludes a jury from finding the requisite sexual penetration necessary to sustain a conviction under MCL 750.520d(1)(a). " 'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.' " *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009), citing *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

one in 933.7 octillion. Furthermore, DNA samples collected in KB's vaginal and cervical swabs revealed the presence of DNA that matched defendant's known Y chromosome haplotype. Although this DNA could have come from anyone in defendant's paternal lineage, defendant was 416 times more likely to be the actual contributor than any other individual with a matching haplotype. These facts were sufficient for the jury to find, beyond a reasonable doubt, that defendant was guilty of CSC-III under MCL 750.520d(1)(a).[4]

## B.  UPWARD DEPARTURE FROM SENTENCING GUIDELINES

Defendant argues that the trial court abused its discretion when it sentenced him to 30 to 60 years' imprisonment, which exceeded the sentencing guidelines range and the 25-year mandatory minimum sentence under MCL 769.12(1)(a). We disagree.

A sentencing departure occurs when, as in this case, a court imposes a sentence that exceeds "both the applicable guidelines minimum sentence range and the . . . mandatory minimum." *People v Wilcox*, 486 Mich 60, 73; 781 NW2d 784 (2010). This Court reviews an upward departure from the sentencing guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant. *Id*. at 477, citing *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). That is, sentences imposed by trial courts must be proportionate to the seriousness of the circumstances surrounding the crime and the defendant. *Milbourn*, 435 Mich at 636.

The Michigan Supreme Court, in *Steanhouse II*, 500 Mich at 471, reaffirmed the principle of proportionality test articulated in *Milbourn*. That is,

> a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender. [*Milbourn*, 435 Mich at 651.]

The sentencing court must also consult and account for the guidelines, which " 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion.' " *Steanhouse II*, 500 Mich at 474-475, quoting *Lockridge*, 498 Mich at 391.

---

[4] Defendant additionally asserts that the prosecution was required to prove that he used force or coercion to accomplish sexual penetration in order to sustain a conviction of CSC-III. Defendant is incorrect. See MCL 750.520d(1)(a). Moreover, as previously discussed, the evidence supports a finding that defendant did use force or coercion in order to sexually penetrate KB.

In implementing the principle of proportionality, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse II*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661. The *Steanhouse II* Court expressly distinguished the test from one requiring " 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Steanhouse II*, 500 Mich at 473-474, quoting *Gall v United States*, 552 US 38, 47; 128 S Ct 586; 169 L Ed 2d 445 (2007). The principle of proportionality test does not create a presumption of unreasonableness for sentences that deviate from the guidelines range. *Steanhouse II*, 500 Mich at 474. Factors that may be considered under the test include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (*Steanhouse I*), aff'd in part and rev'd in part on other grounds 500 Mich 453 (2017) (citations omitted).]

In this case, the trial court fulfilled its obligation to consult and account for the guidelines prior to sentencing defendant under *Steanhouse II*, 500 Mich at 474-475. The trial court nevertheless sentenced defendant to 30 to 60 years' imprisonment, an upward departure of 5 years from the mandatory minimum sentence for defendant's convictions under MCL 769.12(1)(a). The trial court explained that the upward departure was justified for three reasons: (1) defendant had a lengthy criminal record, such that a rehabilitative sentence could not be fashioned; (2) defendant demonstrated a lack of remorse for his crimes, believing himself to be the victim; and (3) the guidelines failed to account for the nature of the instant offenses, particularly in light of defendant's previous convictions for engaging in unlawful sexual conduct with underage girls.

With regard to defendant's criminal record, the trial court did not err by giving it due consideration. Indeed, the trial court was obligated to take defendant's background into account under *Milbourn*, 435 Mich at 651. "[A] defendant's prior criminal history and recidivist history . . . [a]re included in the scoring of the prior record variables and offense variables and, thus, [a]re insufficient to support an upward departure absent a finding by the trial court that the factors were given inadequate weight when scored." *People v Hendrick*, 472 Mich 555, 564 n 10; 697 NW2d 511 (2005), citing MCL 769.34(3)(b). However, unlike the trial court in *Hendrick*, 472 Mich at 564 n 10, the trial court in this case explicitly determined that the guidelines failed to give adequate weight to defendant's criminal history.

Further, a defendant's uncontrollable attraction toward minors is a factor not adequately considered under the guidelines. See *People v Armstrong*, 247 Mich App 423, 425; 636 NW2d 785 (2001). Likewise, the sentencing guidelines do not adequately account for the need to protect other children from a defendant who might engage in further unlawful acts against children in the future if not incarcerated. *Id*.

In addition to other prior offenses, in 1994, defendant pleaded guilty to one count of CSC-III against a minor under the age of 13. In 2013, defendant pleaded *nolo contendere* to one count of fourth-degree criminal sexual conduct (CSC-IV) against a minor. Defendant was still

on probation for his 2013 CSC-IV conviction at the time he committed the instant offenses. Defendant's criminal history and predilection for engaging in sexual acts with minors, which has been undeterred by years of imprisonment and probation for previous CSC-III and CSC-IV convictions, are factors that are not adequately accounted for by the guidelines. See *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017). The trial court did not err by sentencing defendant to a term of imprisonment constituting an upward departure of five years on the basis of his criminal history and seemingly uncontrollable attraction to underage girls. See *Armstrong*, 247 Mich App at 425. Further, as noted in *Steanhouse I*, 313 Mich App at 46, defendant's expressions of remorse, or lack thereof, are not adequately weighed by the sentencing guidelines. Accordingly, the trial court did not err by justifying its sentence, in part, on the basis of defendant's insistence that he was the victim in this case.

Affirmed.

/s/ Michael J. Kelly
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra